Mary E. Ryan, Respondent, *v.* The Manhattan Railway Company, Appellant.

Where a station of an elevated street railway is located upon a curve convex towards the track, as an opening between the station and the ends of a car is inevitable and a necessary result of the practical operation of the road, the bare fact of its existence is not negligence.

So, also, as the railway follows the street and must reproduce its curves, and as the locality of any station is determined by the public convenience, the presence of the curve and the location of the station upon it is not negligence.

*It seems* however, the opening should be no wider than is necessary, and if the necessary opening is so wide as to exceed the ordinary and natural step of a passenger and so may become a source of danger, further precautions on the part of the company are required.

The locality should also be well lighted so that the passenger can see the opening.

In an action to recover damages for injuries received by plaintiff while attempting to get on board one of defendant's cars at a station located on such a curve, by stepping into the opening between the car and station platforms, it appeared undisputedly that the track and platform at this station had been unchanged for six years, except that at one time when new cars were introduced the station platform was cut away three inches to allow the new cars to pass, and the platforms of the old cars were widened the same amount, so that the opening between them and the platform remained the same. Although many thousands of passengers got on and off at this station, but one accident, arising from stepping between the cars and the station platform, happened, and this of so slight a character it was not reported to defendant. Plaintiff had, prior to the accident, taken the cars at this station a hundred times or more without injury. The testimony of defendant's witnesses, who measured the distance between the station platform at the place of the accident and that of a great number of cars was that the opening was less than eight inches, and it appeared that the cars came as close to the platform as was safe or prudent. Defendant's counsel requested

the court to charge that if the space between the car and station plat-
form at the point where plaintiff was injured was not more than eight
inches, it was not negligence for defendant to have such space, and
plaintiff could not recover. The court refused so to charge, but sub-
mitted it to the jury as a question of fact. *Held*, error.
*Boyce* v. *M. R. Co.* (118 N. Y. 314), distinguished.

(Argued March 12, 1890; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Supreme
Court in the second judicial department, entered upon an order
made May 14, 1888, which affirmed a judgment in favor of
plaintiff entered upon a verdict and affirmed an order denying
a motion for a new trial.

This was an action to recover damages for personal injuries
received by plaintiff from stepping into a space between the
station platform and one of defendant's cars while attempting
to get on board at its station in Grand street in the city of
New York.

The material facts are stated in the opinion.

*Edward S. Rapallo* for appellant. The learned trial judge
erred in refusing to nonsuit the plaintiff, it appearing affirma-
tively that the defendant was not guilty of any negligence.
(*Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 356; *Loftus* v.
*U. F. Co.*, 84 id. 455; *Lafflin* v. *B. & S. W. R. R. Co.*, 106
id. 136; *Dubois* v. *City of Kingston*, 102 id. 219; *Steinweg*
v. *E. R. Co.*, 43 id. 123, 126, 127; *Field* v. *N. Y. C. R. R.
Co.*, 32 id. 339.) The plaintiff was guilty of contributory
negligence. (*Dubois* v. *City of Kingston*, 102 N. Y. 219;
*Hanrahan* v. *M. R. Co.*, 53 Hun, 420; *Palmer* v. *P. Co.*,
111 N. Y. 488; *Barker* v. *Savage*, 45 id. 191; *Powell* v. *N.
Y. C. & H. R. R. R. Co.*, 25 Wkly. Dig. 107; 38 Hun,
640; *Halpin* v. *T. A. R. R. Co.*, 8 J. & S. 175; *Morrison*
v. *E. R. Co.*, 56 N. Y. 302, 307.) It was error to admit evi-
dence of a previous accident claimed to be due to the space
between the platform of the rear car and the station platform,
unless connected with the fact that the accident was brought
home to the knowledge of the company. (*Johnson* v. *M. R.*

*Co.*, 23 N. Y. S. R. 388; *Dongan* v. *C. T. Co.*, 56 N. Y. 1, 7; *Loftus* v. *U. F. Co.*, 87 id. 455, 460.)

*Isaac N. Mills* for respondent. The defendant was bound to exercise at least ordinary care, " in view of the dangers to be apprehended," to provide a safe platform as a passage-way to and from its cars, between them and its station build-ings. (*Kelly* v. *M. R. Co.*, 112 N. Y. 450; *Palmer* v. *P. Co.*, 111 id. 488; *Morris* v. *H. R. R. Co.*, 106 id. 679; *Lafflin* v. *B. & S. R. R. Co.*, 106 id. 139; *Gonzales* v. *N. Y. & H. R. R. Co.*, 35 How. Pr. 407, 416, 417; *Weston* v. *N. Y. E. R. R. Co.*, 10 J. & S. 160, 161; 73 N. Y. 595; *Coddington* v. *B. C. R. R. Co.*, 102 id. 68, 69; *Smith* v. *B.*, etc., *P. Co.*, 14 J. & S. 90; 80 N. Y. 414; *Caldwell* v. *N. J. S. Co.*, 47 id. 288; *Maverick* v. *E. A. R. R. Co.*, 36 id. 381; *Carroll* v. *S. I. R. R. Co.*, 58 id. 133; *Clussman* v. *L. I. R. R. Co.*, 9 Hun, 619; 73 N. Y. 606; *Ferris* v. *U. F. Co.*, 36 id. 312; *Hulbert* v. *N. Y. Co.*, 40 id. 150, 151; *Palmer* v. *D. & H. C. Co.*, 46 Hun, 488; *Clune* v. *E. R. R. Co.*, 15 N. Y. S. R. 826.) The jury were warranted by the evidence in finding the defendant negligent by reason of the existence of the uncovered and unguarded opening through which the plaintiff stepped. (*Breen* v. *N. Y. C. & H. R. R. R. Co.*, 109 N. Y. 299; *Chrystal* v. *T. & B. R. Co.*, 105 id. 168; *Green* v. *Banta*, 16 J. & S. 157; 97 N. Y. 627; *Caldwell* v. *N. J. S. Co.*, 47 id. 282; *Mullen* v. *St. John*, 57 id. 568–572; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.*, 95 id. 566, 567; *Allen* v. *D. D., E. B. & B. R. R. Co.*, 19 N. Y. S. R. 116, 117, 119, 120; *Manson* v. *M. R. Co.*, 8 id. 122; *Tonkins* v. *N. Y. F. Co.*, 47 Hun, 564; 113 N. Y. 653; *Ferris* v. *U. F. Co.*, 36 id. 312; *Boyce* v. *M. R. Co.*, 22 J. & S. 286; *Kelly* v. *N. Y. & S. R. R. Co.*, 109 N. Y. 46; *Kelly* v. *M. R. Co.*, 112 id. 443; *Palmer* v. *Penn. Co.*, 111 id. 488.) Plaintiff was free from contributory negligence. (*Tonkins* v. *N. Y. F. Co.*, 47 Hun, 665; 113 N. Y. 653; *Weed* v. *Village of Ballston*, 76 id. 333; *Bassett* v. *Fish*, 75 id. 303; *Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 id. 455; *Palmer* v. *Dearing*, 93 id. 10;

*Camp* v. *Wood,* 76 id. 96; *Ferris* v. *U. F. Co.,* 36 id. 313–315.) In an action to recover for personal injuries caused by negligence, a nonsuit cannot be granted or a verdict for defendant directed upon the issue of the negligence of the defendant, or upon that of the contributory negligence of the plaintiff, where such issue depends upon conflicting evidence or on inferences to be drawn from circumstances in regard to which there is room for a difference of opinion among intelligent men. (*Hoag* v. *N. Y. C. R. R. Co.,* 111 N. Y. 199; *Galvin* v. *Mayor, etc.,* 112 id. 223, 229; *Archer* v. *N. Y., N. H. & H. R. R. Co.,* 106 id. 601; *Lilly* v. *N. Y. C. & H. R. R. R. Co.,* 107 id. 577; *Bagley* v. *Bowe,* 105 id. 171, 179; *Byrne* v. *N. Y. C. & H. R. R. R. Co.,* 104 id. 367, 368; *Kunz* v. *City of Troy,* Id. 352; *Rehberg* v. *Mayor, etc.,* 91 id. 141; *Sherry* v. *N. Y. C. & H. R. R. R. Co.,* 104 id. 652, 653, 656; *Payne* v. *T. & B. R. R. Co.,* 83 id. 574; *Hart* v. *H. R. B. Co.,* 80 id. 622; *Ochsenbein* v. *Sharpley,* 85 id. 224; *Gonzales* v. *B. R. Co.,* 39 How. Pr. 409; *Nolan* v. *B. C. & N. R. R. Co.,* 87 N. Y. 67; *Bernhard v. R., etc., R. R. Co.,* 1 Abb. Ct. App. Dec. 134; *Weber* v. *N. Y. C. & H. R. R. R. Co.,* 58 N. Y. 455; *Dobiecki* v. *Sharp,* 88 id. 207.) The plaintiff had the right to assume that defendant had discharged its legal duty, and that (as a consequence of its having done so) there were no open spaces in the passage-way against which proper care and caution on its part could guard. (*Archer* v. *N. Y., N. H. & H. R. R. Co.,* 106 N. Y. 595, 597; *Jennings* v. *Van Schaick,* 108 id. 530; *Merwin* v. *M. R. Co.,* 48 Hun, 611; 113 N. Y. 659; *Weston* v. *N. Y. E. R. R. Co.,* 16 J. & S. 160, 161; 73 N. Y. 595; *Ferris* v. *U. F. Co.,* 36 id. 313; *Hulburt* v. *N. Y. C. & H. R. R. R. Co.,* 40 id. 151; *Gonzales* v. *N. Y. & H. R. R. Co.,* 39 How. Pr. 420.) The exceptions taken by the defendant relating to the right of the plaintiff to prove that before her accident similar accidents took place at the same place and in the same manner as did the one in which she was injured cannot be sustained. (*Quinlan* v. *City of Utica,* 11 Hun, 218; 74 N. Y. 603; *McCarragher* v. *Rogers,* 8 N. Y.

S. R. 847; 44 Hun, 628; *Ster* v. *Tuety,* 45 id. 51; *Scott* v. *Hough,* 14 N. Y. S. R. 401; *Tonkins* v. *N. Y. F. Co.,* 47 Hun, 564; 113 N. Y. 653; *Merwin* v. *M. R. Co.,* 48 Hun, 610; 113 N. Y. 659; *Pomfrey* v. *Village of Saratoga Springs,* 104 N. Y. 469; *Lafflin* v. *B. & S. R. R. Co.,* 106 N. Y. 469; *Dongan* v. *C. T. Co.,* 56 id. 2, 7; *Loftus* v. *U. F. Co.,* 84 id. 455; *Burke* v. *Witherbee,* 98 id. 562, 566; *Kelly* v. *N. Y. & S. B. R. R. Co.,* 109 id. 46, 47.) The knowledge of the witness Livermore, obtained by him in the discharge of his duties as defendant's agent (conductor), in the charge and management of defendant's train, respecting its operation in receiving and discharging passengers was, in law, the knowledge of the defendant. (*Adams* v. *Mills,* 60 N. Y. 539; *A. S. Bank* v. *Lavery,* 82 id. 307; *Meyers* v. *M. L. Ins. Co.,* 99 id. 11; *Hier* v. *Odell,* 18 Hun, 314; *Laning* v. *N. Y. C. R. R. Co.,* 49 N. Y. 538; *Allen* v. *D. D., E. B. & B. R. R. Co.,* 19 N. Y. S. R. 116; *Rossman* v. *K. I. Co.,* 23 Wkly. Dig. 446; *Pantzar* v. *T. F. I. M. Co.,* 99 N. Y. 374, 377.) The request to charge that if the space between the car and station platform was no more than eight inches, it was not negligence for defendant to have such space, and that if such space was not over eight inches, plaintiff could not recover, was erroneous and properly refused, if either proposition were unsound. (*Hamilton* v. *Eno,* 81 N. Y. 127; *Keller* v. *N. Y. C. R. R. Co.,* 24 How. Pr. 183; *Halsey* v. *R. W. & O. R. R. Co.,* 12 N. Y. S. R. 322; 113 N. Y. 622; *Caldwell* v. *N. J. S. Co.,* 47 id. 286, 287; *Schreiber* v. *T. T. S. R. R. Co.,* 10 N. Y. S. R. 441; 45 Hun, 592.)

Finch, J. The negligence charged in the complaint consisted in two omissions on the part of the defendant company: First, in failing to have a platform or entrance-way to the car of sufficient or proper width; and, second, in "failing to carefully and prudently maintain and operate the said station platform, car and platform thereto, and the train to which said car was attached." No evidence was given as to the latter omission except as incidental to the first. It was

claimed that the train might have been stopped at a different point relatively to the station, and so avoided an undue or improper opening between the station platform and the car platform; but the accusation rests upon the hypothesis that such improper opening in fact existed, and seeks only to show the absence of a necessity for it. The two allegations were, therefore, in fact one; that the defendant company left an improper and dangerous opening in the pathway of its passengers without any necessity therefor. In this respect the case differs radically from that of *Boyce* v. *M. R. R. Co.* (118 N. Y. 314). There no negligence was imputed to the company for the existence of the opening, but for leaving it unguarded and unlighted. Assuming that its existence was a necessity in the practical operation of the railroad, negligence was predicated of the omission to properly guard and light it. No such omission is charged in this case, but the negligence averred rests upon the existence of the opening itself as being wider than prudence permitted or necessity required.

Concededly some opening was necessary. The cars must not scrape the platform of the station, and must be far enough away to allow for the oscillation and swaying of the train. On a perfectly straight track three or four inches of separation would be all that necessity required and as much as should be usually maintained. But a perfectly straight line cannot everwhere be constructed. The elevated roads traverse the streets of the city and must reproduce their curves. The supporting pillars mainly follow the lines of the street curbing so as to obstruct as little as possible the use and occupation of the roadway. Curves, therefore, are necessary, and their presence justifiable. No negligence can be founded upon their existence. The locality of the stations is determined by the public convenience. The fundamental law to which the elevated roads owe their existence required them to be sufficient and suitable to accommodate the public travel. They must not be too far apart or too few in number, and must, ordinarily be placed at street crossings. There only do

they gain sufficient room and light and convenience of access. Such a station on the defendant's road is located at Grand street. There is no suggestion of impropriety or negligence in establishing it at that point, and the prudence of that location must be taken for granted. But the road at that street follows a curve and the station platform necessarily must be made to conform in order to secure a safe and convenient access to the train. It was made to conform to some extent at least. But a new necessity thereupon became manifest. The body of a car forms an unbending straight line and wherever there is a curve becomes the chord of an arc. If the outer line of the platform, following the curve of the track, as it should to bring all points as near as possible to the train, shows a convexity to the cars, any one of them in passing will have its center nearer to the station than one or both ends. If the car stops and the center is within four inches of the platform, one or both ends will be further away depending upon the character or degree of the curve. It follows, therefore, that where a station is located upon a curve and is convex towards the train which becomes a tangent, the closest approach reasonably possible of the center of the car will leave the ends further away, and in such case that distance and the consequent opening is inevitable, a necessary result of the practical operation of the road, and its presence, the bare fact of its existence, is not and cannot be deemed negligence. But, if the necessary opening is so wide at a given station as to exceed the ordinary and natural step of a passenger, it may become a source of danger and require further precaution on the part of the company. The locality should be well lighted, so that the passengers can see what the opening is, and it was that omission which was a determining element in the *Boyce Case.* The question, therefore, presented by this action was whether the opening into which plaintiff stepped was or was not wider than was necessary and so much so as to produce danger to the passengers.

It was uncontradicted that the track and the platform at Grand street had been unchanged for six years, with a single

exception.   At one time wider passenger cars were substituted
for those in use.   The increase was about six inches, or three
inches on each side.   That increase required a corresponding
cutting away of the station platforms to enable the new cars
to pass, and the fact shows that the old cars ran so close at
some points as to make three inches more of width in the cars
strike the platforms.   For a time the old cars were used in
connection with the new, and, to make them correspond, metal
plates were put upon the car platforms, widening them the
added three inches on each side, so that the opening which
they left remained as before.   What the cars gained in width
the platforms lost, and the openings remained unchanged.
For six years prior to the plaintiff's injury, these openings had
proved to be safe and not at all dangerous.   Whatever was
the width at Grand street, thousands upon thousands of pas-
sengers, often in a hurry and thronging in crowds, had stepped
over it without harm or danger.   But a single instance is dis-
closed to the contrary, and that of so slight a character that it
was not reported to the company.   How is it possible to say
that an opening thus tested by years of use was negligent in
its origin or its maintenance?   Indeed, the plaintiff herself
adds to the force of this fact.   She had taken the cars at that
point a hundred times or more, stepping across the opening
without trouble or danger, and gives unconscious testimony to
its safety by seeking to show that on this one occasion a change
had occurred and the opening was wider than usual.   Her
whole case depends upon that allegation, the burden of which
rested upon her.   She meets it by a guess.

   In her testimony she estimated by the eye that the width of
the opening was fourteen to fifteen inches.   She did not
notice the opening at all until just as she was lifted out of it,
and was looking straight at the car and not at the opening
when she stepped in.   This was contrary to her habit and
without any apparent reason.   No one else stepped into the
opening.   The other passengers seem to have found no diffi-
culty and encountered no risk.   She alone, paying no atten-
tion to her steps, went blindly into the opening.   If she had

exercised even ordinary care, there is no reason to suppose that her safety would have been endangered. Of course, her theory of a new and unusual width of the opening founded upon a glance of the eye as she was lifted out of it, could not rise to the level of evidence, unless in some manner fortified and then explained. She sought to fortify it in two ways. She says her foot went down without touching either platform ; that her shoe was nine inches long, and she knows it went down straight. And yet at that moment she was looking directly at the car and stepped into the opening unconsciously. It is palpable that these details were not observed by her, and that she did not and could not know whether her foot inclined to the right or left, or went into the gap on a perfect level or not.

But she went again to the scene of the accident and took a witness with her, named Ahmuty. The accident happened April 25, 1885. On the 13th of December, 1886, more than a year after the occurrence, she requested Ahmuty to go with her to the Grand street station, showed him the locality of the injury as about six or eight feet from the north end of the platform, and both stood there watching the approach and departure of the cars. Ahmuty estimates the opening as " in the neighborhood of fifteen inches," but did not measure it, and on cross-examination said that he went again to the same place at the request of plaintiff's counsel, who did not ask him " to measure the distance," but requested him to make a judg-ment from his eye; and after this second view he says that the opening " was about fifteen inches, more or less; may be less, not more; it may be less; I can't say how much less it might be; I do not think it could be eight inches less; I am not sure about it." With abundant opportunity to measure the gap and to know its width, the means of ascertaining the truth seem to have been purposely omitted, and the estimate of Ahmuty is confessedly uncertain and unreliable. But the plaintiff called another witness, Livermore. He had been a conductor on the elevated road from 1878 to 1886 and had thus become quite familiar with the situation during all that

period.　He said the opening between car and platform at the Grand street station was from seven to eight inches, or less than the ordinary step of a child.　That closed the plaintiff's case.　She failed to show that the opening which existed was wider than the necessities of the road compelled, or such as to be at all dangerous to passengers.　On the contrary, her own experience and the result of years of use by thousands of passengers utterly dispelled the charge of negligence, unless some ground for a supposed change in the opening could be discovered and put forward as an explanation to rebut the inference from use.　That explanation was founded upon the change in the width of the cars.　It is said that the car which plaintiff approached may have been one of the old cars, upon which no widening plate had been put, or from which the plate had been broken off.　There is no evidence of either fact.　The suggestion is that of a bare possibility and one which the evidence of Livermore does not in the least encourage; for he says the plates were put on all the old cars and whenever a piece was broken out, which rarely happened, the car was at once taken out of the train and repaired.

On these facts it seems to me that a verdict for the plaintiff cannot be supported, and that the charge of negligence was wholly unproved.　That there was a scintilla of proof may, perhaps, be said of the plaintiff's guess at the width of the gap unsupported by one of her witnesses and contradicted by another.　More than that I do not think it possible to say, and that is not enough.

But if to some minds it may seem just and lawful to hang a verdict of negligence and award of damages upon a guess of the party in interest, purposely left untested and unverified, then it may be needed that we follow the further progress of the case and examine the mode of its submission to the jury.

Three witnesses were called for the defendant, who patiently watched the passage of the trains at the Grand street station, and measured the distance of the car platforms at the point of the accident from the station platform.　One of them was a city surveyor and civil engineer.　He said the center of the car

was three and a half to four inches away, and six and a half to seven inches at the end.   He added : " It was seven inches, the largest distance.   That is mathematically correct.   On that curve, as described by that railroad, it could not have been more than that.   I measured fifteen cars, and I found as a practical fact that it corresponded with the mathematical demonstration which I made."   Another city surveyor measured the openings made by fifty-seven different cars, on as many different trains, with results varying from five inches to seven, one car only giving seven and three-quarters.   A third witness, also a civil engineer, verified these measurements, and added that the center of each car in passing came within two or three inches of the line of the platform.   The first witness measured cars which gave three and a half to four inches. Beyond that there is no contradiction.   No witness on either side varies from the latter distance more than half an inch. It shows conclusively that the defendant company came as close to the platform with their passing cars as was at all safe and prudent, taking into view their swaying and oscillation, and no reasonable inference to the contrary is possible ; so that as an inevitable consequence the gap at the end, whatever its width, could not be made less than it was.   There was thus no negligence in its existence, as shown by entirely uncontra-dicted evidence.

The defendant sought to get the benefit to which it was entitled from this proof at the hands of the court in two ways. First, it asked a dismissal of the complaint on the ground that no negligence was shown on the part of the defendant, and the request was refused.   The defendant asked the court to charge " that if the jury find that the space between the car and station platform at the time and place when and where plaintiff stepped between them was not more than eight inches it was not negligence on the part of the defendant to have such space, and the plaintiff cannot recover."   The court answered : " I refuse to charge that as a question of law, but leave it to the jury as a question of fact."   That is, the jury were permitted to find as a fact that an eight-inch opening

was negligent, in the face of entirely uncontradicted evidence that such opening at that point was absolutely necessary to the safe operation of the trains; and of the further fact that the plaintiff's claim of negligence was based upon the existence of an opening of twice that width. There was no question of fact about it. Upon the undisputed proofs on which the request was founded, no inference of negligence for the existence of the eight-inch opening was possible, and the defendant had a right to have the jury so instructed. (*Zabriskie* v. *Smith*, 13 N. Y. 322; *Foster* v. *People*, 50 id. 601.) The respondent makes three answers to this alleged error, all of them seeking to show that the question raised by the request was not purely one of law. He says the jury may have believed that the space was widened by the absence of an iron plate; but the hypothesis submitted negatived that and confined the request to a width of eight inches. Then the respondent says that the request could not be charged as matter of law in view of previous accidents. There were none to break the force of the usage, and the suggestion takes no account of the obvious necessity resting upon the company from the effect of the curve. Finally the respondent says the train might have stopped lower down so as to have avoided the effect of the curve; but the evidence disposes of any such possibility by showing that the consequences would be that the last two cars of the train would have no entrance platform at all. It follows that the court should have charged as requested, and the exception to the refusal was well taken.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except RUGER, Ch. J., dissenting.

Judgment reversed and new trial granted, costs to abide the event.