COOGAN v. INTERBOROUGH RAPID TRANSIT CO.

(Supreme Court, Appellate Term.   June 1, 1906.)

1. CARRIERS—INJURIES TO PASSENGERS—PLATFORMS.
    Where a subway platform was constructed according to law, and the space left between the edge of the platform and the cars was necessary to a safe passage of the cars along the platform, the carrier was not guilty of negligence merely because of the existence of such space, rendering it liable for injuries to a passenger who fell into the same while attempting to board a train.
    [Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 1143.]

2. SAME—WARNING.
    Where a carrier of passengers maintained a subway station platform with a space nine inches wide between the edge of the platform and the subway cars, it was bound to give such timely warning to passengers about to board the cars as ought to be and naturally would be heard and understood by the passengers who were giving ordinary attention to their surroundings, though it was not bound to give a specific caution to a particular passenger.

3. SAME—EVIDENCE.
    In an action for injuries to a passenger while boarding a subway train. by falling into a space between the depot platform and the train, evidence that no warning of the existence of such space was given held insufficient to sustain a finding to that effect.

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Julia Coogan, by her guardian, etc., against the Interborough Rapid Transit Company. From a Municipal Court judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before GILDERSLEEVE, DAVIS, and CLINCH, JJ.

Charles A. Gardiner, for appellant.

J. B. Doyle, for respondent.

DAVIS, J. The defendant appeals from a judgment for $350 and costs in favor of the plaintiff, rendered in the Municipal Court after a trial without a jury. The action was brought to recover $500 as damages for personal injuries. The plaintiff is a young woman 18 years of age. On the 29th of April, 1905, at about 11 p. m., while getting on a north-bound subway train at the Times Square station, she fell between the platform and the car, and was there suspended by her waist for a minute. She was extricated and boarded the car to continue her journey. She testified that she was accompanied by her friend, Miss Converse; that the train came in a minute or two after they got upon the station platform; that she saw a good many people standing over near the edge of the station platform, but she could not tell how many; that in getting on the train she was directly behind Miss Converse, who got on the car before plaintiff fell; that before she fell she did not see the space between the car and the platform, but was looking straight ahead of her; that she was watching where she was going; that four or five people got on the train before her; that she was right next to Miss Converse; that behind her there were a good many people crowding her; that she could see over the heads of some of those in front of her, and could see the entrance to the train; that a station guard stood near the entrance of the car, and called out, "Step lively, please," and what train it was; that she responded to the call "Step lively"; that she did not hear him say anything else, and she is quite positive that he said nothing else; that there was a noise of the people in the station. On cross-examination plaintiff said that she frequently rode upon the subway trains, but had never gotten on or off at the Times Square station. The plaintiff's companion, Miss Converse, substantially corroborated the plaintiff. This witness testified that there were about 20 people trying to get on the train, and they were very close together; that she saw people looking at the space before they went into the car; that they just looked down and went into the car; that the witness also looked down, and passed safely over the space; that the space was lighted underneath, so that she saw it; that she heard the plaintiff scream, and, turning around, she saw her being helped out of the space. She further says that the space was about 10 inches in width, and that she did not see any guard on the station platform, and heard no warning of any kind; there being a great noise at the time.

From the evidence introduced by the defendant it appears that the space referred to above was nine inches wide just opposite the middle point of the entrance to the car; that this width was absolutely required to allow the middle part of the car to clear the station platform, which there curved outward toward the car; that the space was lighted from below by incandescent space lights of 16-candle power, placed directly under the overhang of the station platform. It also appears in evidence that, where a station platform is built on a straight line, a space of 4 or 4½ inches between the car and the station plat-

form is necessary to allow the car to clear the station in case of a maximum swaying of the car. The defendant called the two station guards who were on duty on the night of the accident to the plaintiff, and showed by them that it was their custom to warn all passengers at every train to watch their steps in getting on and getting off the cars. Neither of these witnesses saw the accident complained of. Under the evidence in this case no negligence can be imputed to the defendant merely because of the existence of the space in question. The platform was constructed according to law, and the space was necessary to a safe passage of the cars along the platform. Ryan v. Man. Ry. Co., 121 N. Y. 126, 23 N. E. 1131. Indeed, the plaintiff's sole charge against the defendant is that it was negligent in omitting to give warning of the existence of the space into which plaintiff fell. The court below doubtles found that ordinary care on the part of the defendant required the giving of a warning of the existence of the space, and that it failed to give the warning. Under the peculiar circumstances of this case we think that ordinary care did require the defendant to give warning of the existence of the space—not a specific caution to the plaintiff personally, but, as was said in the case of Langin v. New York & Brooklyn Bridge, 10 App. Div. 529, 532, 42 N. Y. Supp. 353, 355—

"the timely utterance of cautionary words in such a tone and of such a character that they ought to be, and naturally would be heard and understood by passengers giving ordinary attention to what is going on around them * * *."

Under the evidence here the necessity of giving this warning arose, not from insufficient lighting, because the space was well lighted, but from the fact that the space was unusually wide and other passengers close together were crowding into the car immediately in front of and close to the plaintiff, thus hiding the space from her sight. The defendant claims that it gave full warning of the existence of the space. If the evidence establishes this claim, we think the judgment should be reversed. Neither the plaintiff nor Miss Converse state positively that no warning was given. Miss Converse merely says that she heard none, and the plaintiff says that she heard none, and is quite positive that none was given. In effect this testimony amounts to nothing more than that these witnesses heard no warning. On the other hand, we think that the testimony of the two station guards and the man in charge of the ticket box fairly establishes the defendant's claim that the requisite warning was given on this occasion. These witnesses testified in effect that the warning was given by the guards for every train that came to the station, not only on the night in question, but on every other occasion when they were on duty. It may be that the plaintiff did not hear the warning; but that is not necessary, as long as the warning is given in such a way as to be likely to be heard by a person exercising ordinary care under the conditions existing at the time. We therefore conclude that there was a failure to prove that the accident happened through any negligence of the defendant.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.