LOUIS A. IORIO, Also Known as ANTHONY DIBENARDO, Appellant, v. THOMAS E. MURRAY, JR., as Receiver of INTERBOROUGH RAPID TRANSIT COMPANY, Respondent.

First Department, March 17, 1939.

*Charles Kramer* of counsel [*Jacob Hirsch*, attorney], for the appellant.

*A. L. Wilbur* of counsel [*James L. Quackenbush*, attorney], for the respondent.

CALLAHAN, J. This was a trial had before court and jury. At the close of the plaintiff's case the court reserved decision on defendant's motion to dismiss the complaint. Thereafter, in the course of the testimony of the first witness called by the defendant, the court ruled upon the prior motion and dismissed the complaint. The question presented, therefore, is whether the plaintiff — considering his proof in the light of the most favorable inferences to be drawn therefrom — established a *prima facie* case.

Plaintiff was injured on October 3, 1933, while leaving the car of a subway train operated by defendant at the Times Square Station in New York city. At the station in question the tracks are curved, and plaintiff's evidence discloses that at the point where he was leaving the car, which was at the center door thereof, there was a space of eleven inches between the car and the platform.

Plaintiff boarded the car at Grand Central Station, and was standing with a number of other passengers in the aisle. Immediately in front of him, nearer to the center door, was a woman passenger. When the car arrived at Times Square Station, and the door opened, the woman stepped out ahead of the plaintiff. He was about to follow, his foot went into a space between the car and the platform, and he was thrown to the platform and suffered serious injuries. Among the injuries received were wounds to his leg extending from the ankle to about two inches below the knee.

The testimony discloses that at the point in question the railway company had provided a sliding wooden platform, or " gap-filler," which was to be slid into place by a lever operated by an employee of the defendant when a train arrived at the station. This gap-filler was so installed that its upper surface was seven and one-half inches below the level of the subway platform.

Plaintiff testified that when he fell his leg went down right up to his knee, and that he did not see any guard near the scene of the accident until after he had been picked up; nor could he see whether the gap-filler was in place when he fell.

Plaintiff's claims of negligence were based (1) on the dangerous condition created, (2) the failure to give plaintiff any warning, and (3) the failure to supply guards to regulate the crowd.

On the trial plaintiff conceded that no other passenger pushed him, and he did not claim that the existence of a crowd was responsible for his fall. We are, therefore, confined to the question of whether there was sufficient proof of negligence in view of the condition that existed and the failure to warn plaintiff with respect thereto.

The dismissal of the complaint is sought to be upheld by the respondent on the authority of *Ryan* v. *Manhattan R. Co.* (121 N. Y. 126.) The appellant, on the other hand, contends that *Boyce* v. *Manhattan R. Co.* (118 N. Y. 314) is controlling here.

The distinction between the facts in these two cases is that in the *Boyce* case (*supra*), where the railroad company was held liable for negligence, the space between the railway train and the platform was fourteen inches, it was left unguarded and was in an unlighted place; whereas, in the *Ryan* case (*supra*), the court found that while there was some evidence that a space existed fifteen inches in width, the weight of the credible evidence showed that it was only about seven inches in width, and there was no proof of failure to guard, or of absence of light. Under these circumstances, a judgment for plaintiff was reversed in the *Ryan* case and a new trial ordered.

Comparison of the facts in the present case with the two authorities cited discloses that the space in the present case is somewhat larger than that which existed in the *Ryan* case (*supra*) and slightly less than that which existed in the *Boyce* case (*supra*). In the present case we have no claim of lack of light, but there is proof of failure to warn the alighting passengers.

The existence of the space is not of itself negligence, if necessary in the proper operation of the railroad, but negligence may arise if the passengers are not reasonably protected from the danger.

We held in *Lang* v. *Interborough Rapid Transit Co.* (193 App. Div. 56), under similar circumstances, that it was not negligence to fail to warn a plaintiff who testified that she knew of the condition. In the case before us the plaintiff testified that he did not know of the space.

We think that the evidence in the present case required the submission of the issue to the jury as to whether, under all the

circumstances, the defendant was guilty of negligence. The only attempt by the railway company to avoid injury to passengers was in supplying a moving platform, or gap-filler, which was seven and one-half inches below the surface of the main platform. There is evidence in the record that at other stations a movable grillage, or sliding platform, is supplied which comes out on the same level with the platform.

In addition, we find in the present case proof from which the jury might have found that the movable platform was not in proper position at the time, because of the distance which plaintiff's leg descended when he fell. Furthermore there was proof that no warning was given to plaintiff at the time of the accident.

We see no necessity of reviewing the other cases cited in the briefs on this appeal. In each such case the facts are distinguishable.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

O'MALLEY, TOWNLEY, DORE and COHN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.