MARGARET CALLAGHAN et al., Appellants, *v.* CITY OF NEW YORK, Respondent.

First Department, March 2, 1954.

*Joseph R. Apfel* for appellants.

*Andrew Bellanca* of counsel (*Seymour B. Quel* with him on the brief; *Denis M. Hurley, Corporation Counsel,* attorney), for respondent.

BERGAN, J. The proof before the Special Referee is that on December 4, 1950, just before 5:00 P.M., plaintiff Margaret Callaghan alighted from a northbound Lexington Avenue express subway train at the 125th Street station and walked to the local side of the platform. There were at that time at least one hundred people standing on the local side of the platform at the point where said plaintiff crossed.

She testified that she waited on the platform between ten and twelve minutes before the first local train arrived. During this period two or three express trains came into the station, discharging more passengers who crossed over to the local platform. As a result of this she testified " The whole platform was covered with people "; that when the local arrived and the doors were opened, people started to push and " they had pressed up so close together that I couldn't move any part of my body or my hands and my feet." She continued that when she got to the door " I was pushed down. My right foot went down between the platform and the train, and the people walked on top of me ".

She further testified that there was no station guard on the platform anywhere near where she was; no subway employees directing people, and no rails, chains or other protective devices to restrain crowd movements. There is proof in the record that the usual running schedule of locals at that time and station is at about two-minute intervals. As to the occurrence of an accident in the subway, but not as to its cause, Margaret Callaghan is corroborated by another witness. The action is for personal injuries and her husband Daniel Callaghan pleads in the same complaint a cause of action for medical expenses and loss of services. The injuries and medical expenses are not controverted. The Special Referee's decision was for the defendant dismissing the complaint. He was of opinion that no measure of precaution which defendant might have taken to have prevented the accident had been shown.

This proof, in our view of the record, however, made out a case of negligence prima facie and required either some proof that there was no undue overcrowding or that defendant had assigned sufficient guards who were acting with due attention to their responsibilities.

The city's proof followed a somewhat perfunctory course. It contented itself with showing by a civil engineer the physical dimensions of the platform between the express and local tracks: that it was 478 feet long, 30 feet wide, and straight; and that if there were an even distribution of people over the entire surface of the platform it would accommodate 4,366 persons.

The assistant stationmaster testified that on December 4, 1950, during the rush hour from 5:00 to 7:00 P.M., there were seventeen guards assigned to the northbound platform, eleven on the local side and six on the express side. He said he personally was on the platform that day, but did not locate any of the guards except one who was with him; that the platform was usually crowded at that hour.

No proof was offered as to what the guards were actually doing at that period, or where they were located, other than that they were "assigned" by the assistant stationmaster; nor is there any proof on the actual maintenance of the time spacing of trains or their maintenance of schedule.

The city ought to have met the prima facie case presented by plaintiffs by demonstrating all the facts of its operation at that time within its capacity to show them; and where it could not show the facts, the limitations of its resources and facilities to develop them should have been shown. It would not be unreasonable to expect that the city could from its records, either show the actual movement of trains to the platform at the approximate time in question or show that it had no records; and that it could show by a thorough canvass of guards and others what their observations were and how they performed their duties.

It is not enough to rest on physical dimensions of the platform and to say that enough guards were "assigned". It may well be that the arrival schedule of express and local trains was not actually as unbalanced as plaintiffs' proof tended to show. But if such an imbalance did exist, it ought to be held to require a reasonably careful subway officer to take due regard of the condition.

It may also be that the guards were actively engaged in keeping the movement of the crowd from becoming dangerous. But the facts, whatever they were, ought to have been shown within the city's capacity to show them.

The case is not one satisfied by a routine defense. It is true that subway platforms are expected to be crowded in rush hours. But where it is anticipated, or in the exercise of reasonable foresight it ought to have been foreseen, that conditions of crowding will be so excessive as to deprive a passenger of control of free physical action and which would sweep him to a place of danger, measures reasonably appropriate to the danger ought to be taken, or if neglected, the usual risk of liability incurred.

The decisional law is firmly placed in this direction. Examples of the statement and development of the rules are to be seen in *Kye* v. *Murray* (293 N. Y. 897); *Sarkin* v. *Murray* (279 N. Y. 673); *Carlson* v. *City of New York* (268 App. Div. 854); *Dunn* v. *Murray* (264 App. Div. 847), and *Commerford* v. *Interborough R. T. Co.* (199 App. Div. 852).

We do not suggest that on a new trial and a more fully developed record defendant may not prevail; we hold merely that it ought not prevail on the thinly presented defense shown by this record.

The judgment should be reversed and a new trial ordered, with costs to appellants to abide the event.

PECK, P. J., BASTOW and BOTEIN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellants to abide the event.