Lucio CANNIZZO and Lina Cannizzo,
Plaintiffs-Appellees,

v.

The PENNSYLVANIA RAILROAD COMPANY, Defendant-Appellant.

No. 185, Docket 29021.

United States Court of Appeals
Second Circuit.

Argued Nov. 20, 1964.

Decided Jan. 13, 1965.

William L. Shumate, New York City, (Michael Nardone, Highland, N. Y., on the brief), for plaintiffs-appellees.

Myron D. Cohen, New York City, (Conboy, Hewitt, O'Brien & Boardman, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge and MEDINA and MARSHALL, Circuit Judges.

MEDINA, Circuit Judge:

This action by husband and wife to recover damages for personal injuries sustained by the wife and expenses and loss of companionship by the husband was removed from the Supreme Court of the State of New York, in and for the County of Ulster, to the Southern District of New York on the ground of diversity of citizenship. A jury having been waived, trial was had before Judge Cooper, who awarded judgment for the wife in the amount of $7,500 and for the husband in the amount of $750. Defendant, the Pennsylvania Railroad Company appeals.

While the unreported opinion of the trial judge intermingles matters of law and fact, it is clear that he accepted in substance the version of the accident given by the Cannizzos and rejected that of the only witness called by the railroad as "unimpressive and entitled to little weight." Putting together the factual portions of the opinion, with the aid of the trial transcript, it is, we think, fair to say that Judge Cooper accepted the following account of what occurred at the time the wife was injured.

On January 9, 1960 Lucio Cannizzo and his wife Lina, not young in years, were about to board the Florida Special at Pennsylvania Station in New York City for a winter vacation in Fort Lauderdale. The train was scheduled to de-

part at 10:30 A.M. and the passengers gathered as usual near the gate on the upper level of the station. Ten minutes before the scheduled time of departure, the gate was opened and "everybody rushed down." Just a few feet to the right of the foot of the stairway was a single open vestibule, the "common entrance for cars M-22 and M-23," each of which had only reserved seats and accommodated 54 persons. Most of the passengers were scheduled to board the train in New York.

There is no dispute over the fact that there was a considerable wholly uncovered, unprotected and open space between the station platform and the vestibule of car M-23. The coach attendant, whose testimony was rejected as unreliable, describes this open space as eight inches. Mrs. Cannizzo testified it was 18 inches and her husband said it was 15 inches. The trial judge did not resolve this difference, as he thought this fact "not crucial." Whether the existence of this large space or hole was due to a slight curve in the station platform or the track does not appear. In any event, Mrs. Cannizzo did not see the hole and when she stepped into it her entire left leg to a point above the knee went down between the platform and the car.

The crux of the case, is, what were the conditions that led to her stepping into the hole, were these conditions reasonably foreseeable, and did the railroad fail to take reasonable precautions to prevent such an accident. On this phase of the case the findings of the trial judge are clear and they are overwhelmingly supported by the proofs.

The testimony is to the effect that the crowding and shoving by the "mess of people" was of such dimensions as to separate the wife from her husband. She was pushed ahead by the mass of passengers which was such that she did not see the hole and stepped into it. Judge Cooper properly found there was a "crushing" and "unruly" crowd that "amounted to a herding of the crowd on board the train." Even the coach attendant above referred to testified that in the past there had been "crowds coming down, just as a stampede form, pushing, pushing."

While both husband and wife testified they saw no attendant and heard no one pointing out the dangerous condition, and the attendant himself finally admitted he did not see Mrs. Cannizzo fall, Judge Cooper properly held that even had the attendant been present calling out "Watch your step," as he testified he was, this would have been "insufficient to discharge the duty of care owed by defendant under the particular circumstances as they existed at the time in question."

The case is governed by New York law and the briefs give the impression that the decisions of the New York courts are contradictory and confusing. As we find a common thread of sound principle running through the New York cases, we shall discuss them briefly. According to the New York decisions, a carrier may be found negligent if: (1) it should have expected the existence of a crowd, and (2) the injury was caused in a manner that should have been foreseen and might have been prevented had the carrier anticipated crowded conditions.

The railroad relies heavily on Ryan v. City of New York, 1959, 7 A.D.2d 298, 182 N.Y.S.2d 616, aff'd no opinion, 6 N.Y.2d 896, 190 N.Y.S.2d 705, 160 N.E.2d 924, in which plaintiff was injured while going through a turnstile. But in Ryan, plaintiff failed completely to prove that her injury was caused in a reasonably foreseeable manner that defendant might possibly have prevented. Similarly, in Patterson v. City of New York, 1959, 8 A.D.2d 599, 184 N.Y.S.2d 685, plaintiff was apparently injured as a result of being squeezed by a large crowd. The court noted, in reversing a judgment for plaintiff, that it was not foreseeable that the crowd would be so large at that time "as to completely restrict all freedom of movement," and that there was no showing that additional guards would have prevented the injury.

The railroad also relies on Wittes v. City of New York, 1942, 265 App.Div.

810, 37 N.Y.S.2d 655, a case in which no opinion was written. The record on appeal demonstrates, however, that the space in which plaintiff tripped or fell was only about two inches and there was no clear testimony that a crowd had gathered on the platform. And, in McKinney v. New York Consol. R.R. Co., 1920, 230 N.Y. 194, 129 N.E. 652, it was held that a space of about three inches between a subway car and a station platform did not constitute negligence *per se,* the Court of Appeals apparently reasoning that it could not have been foreseen that injury would result from such a relatively small space. Moreover, there was no evidence in McKinney that any crowd had collected.

On the other hand, New York courts have frequently sustained recovery in cases similar to this one. In Kye v. Murray, 1944, 293 N.Y. 897, 60 N.E.2d 30, plaintiff had been pushed on to the subway tracks by a large crowd. In Sarkin v. Murray, 1938, 254 App.Div. 659, 4 N.Y.S.2d 189, aff'd no opinion, 279 N.Y. 673, 18 N.E.2d 309, plaintiff was pushed by a crowd into a space of nine inches between a subway car and a platform. In Carlson v. City of New York, 1944, 268 App.Div. 854, 50 N.Y.S.2d 846, reversing without opinion, 45 N.Y.S.2d 46 (App.T.1943), a jury verdict in favor of plaintiff, who had stood in a crowd which she estimated comprised 20 or 25 people, before being pushed into a space of 6½ inches between a car and a platform, was reinstated.

In Iorio v. Murray, 1939, 256 App.Div. 512, 10 N.Y.S.2d 492, plaintiff's foot entered a space of either 7½ or 11 inches between a car and a platform. The court stated:

"The existence of the space is not of itself negligence, if necessary in the proper operation of the railroad but negligence may arise if the passengers are not reasonably protected from the danger."

Finally, in Callaghan v. City of New York, 1954, 283 App.Div. 388, 128 N.Y.S. 2d 206, plaintiff testified that as a result of a ten or twelve minute interval between express and local trains, so large a crowd had gathered that she was unable to control her movements and her foot fell between the platform and the train. In holding that a *prima facie* case of negligence had been made out, the First Department stated:

"where it is anticipated, or in the exercise of reasonable foresight it ought to have been foreseen, that conditions of crowding will be so excessive as to deprive a passenger of control of free physical action and which would sweep him to a place of danger, measures reasonably appropriate to the danger ought to be taken, or if neglected, the usual risk of liability incurred.

"The decisional law is firmly placed in this direction."

Judge Cooper found that the defendant should have anticipated the likelihood of a crowd when it opened the gate only ten minutes before the announced time of departure. He further noted that at least 60 to 80 people would have had to traverse the short distance between the stairway and the common entrance to cars M-22 and M-23. Presumably it should have been expected that others might congregate within that small space, as the defendant's sole witness testified that guests and friends frequently accompanied passengers. Furthermore, as we have stated, that witness also recognized that "Of course there has been crowds coming down, just as a stampede form, pushing, pushing."

The defendant was obviously chargeable with knowledge that the space between the platform of the station and the train was a dangerous condition in general and much more so in the event of a crowd. It was well within the province of the trier of the facts to conclude that reasonable precautions on the part of the railroad would have prevented the accident.

Affirmed.