■ EVELYN STARK et al., Respondents, v. PENN CENTRAL COMPANY, Appellant.— Judgment dated November 8, 1968 in favor of plaintiff, Evelyn Stark, in the sum of $500,783.50 reversed on the law and on the facts, and a new trial granted, without costs or disbursements, unless within 20 days of the entry of the order herein plaintiff Evelyn Stark stipulates to reduce the verdict in her favor to $400,000 in lieu of the award by verdict, in which event, the judgment, as so reduced and amended, as far as Evelyn Stark is concerned, is affirmed, without costs. The judgment of Robert Rose is affirmed without costs or disbursements. In this personal injury action it is evident that the jury verdict in the Evelyn Stark case is excessive in its award of damages and that a verdict in excess of $400,000 is not warranted by the record. Concur — Eager, Capozzoli, Tilzer and Nunez, JJ.; Steuer, J., dissents in the following memorandum: Plaintiff did not, in my opinion, establish negligence on the part of the defendant. Responsibility for the accident is sought to be laid to defendant on the allied grounds of allowing too large a crowd to gather on the platform and of failing to control that crowd. It has long been recognized that the peculiar circumstances of rapid transit in New York City call for rules which are rather specialized but which accord with the general principle that the degree of care required is what the circumstances call for. The proportions and demands of the traveling public make it inevitable that at the "rush hours" large crowds will repeatedly gather on station platforms and will be siphoned off as the trains come in and absorb those waiting to board them. If access to the platforms were to be refused every time there was a threat of unusual crowding, the transit system could not function. So liability has been limited to two situations: when the railroad, knowing that the schedule

is not being maintained and hence the crowds not being periodically reduced, takes no steps to prevent further crowding (*Callaghan* v. *City of New York,* 283 App. Div. 388) and when the crowd reaches such proportions that individuals are restricted in their free movements (*Ryan* v. *City of New York,* 7 A D 2d 298; *Cross* v. *Murray,* 260 App. Div. 1030). Here, neither of these situations was shown. There was no claim of any breakdown in schedule giving notice that the platforms were not being regularly cleared; in fact, all the testimony was that they were. While several witnesses gave their impressions of a closely packed crowd, no one experienced any particular difficulty in reaching the spot on the platform opted as a place to wait. On the contrary, one witness for the plaintiff who saw the train approaching the platform and actually ran to get in position to board, appears by her own calculation to have traversed a portion of the platform in a length of time that would be creditable if the platform were vacant. She explains her feat by saying she squeezed between people. If she did, there must have been such space that not only her, but general, movement was not unduly restricted. It must be remembered that this defendant was not the city subway. It was a railroad running a commuter service. The situs of the accident was a station being used in unprecedented numbers by people deprived of their regular means of transportation because of the subway strike. The construction was somewhat unusual. Tickets were sold at a place on the other side of the tracks from the platform for southbound trains. From there to the platform access was by means of a bridge which spanned the tracks. Some of those desirous of reaching the platform elected to take the shorter, but more dangerous direct approach across the tracks. There were enough of these for the defendant to find it advisable to station a police officer with a bull horn to give a continuous warning to use the regular approach and avoid the hazard of the tracks. Had the railroad taken the suggested means of controlling the crowd on the platform by shutting off the access across the bridge, the number using the dangerous method of approach would have multiplied and the railroad have been held negligent if any accident resulted therefrom. And if the access was temporarily cut off and reopened as trains pulled in, it would not prevent undue crowding but merely transfer it to another place with its own components of danger. It is difficult to see how, under any of the suggested measures the railroad might have adopted, the failure to make the nice calculations involved could be deemed negligence. It is also claimed that the accident was due to the failure to control the crowd. It is well known to the point of a truism that the traveling public at rush hours is not characterized by good manners or any noticeable regard for the comfort of others. In better than a half century of operation no feasible means of correcting this condition has been found. Furthermore, virtually every such crowd contains a few individuals whose immediate mission is to get on the train and to accomplish this no matter what the consequence to anyone else. It is beyond doubt that while action of that kind can be expected from someone, it is impossible to identify the perpetrator in advance, and negligence has never been founded on action impossible to anticipate. That plaintiff's injuries resulted from individual activity cannot really be disputed. She was pushed against the side of a moving railroad car and thrown by the contact. It is plaintiff's theory that she was pushed by the concerted effort of the crowd massed behind the front line of those occupying the platform. If that were the case, it is inconceivable that plaintiff would have been the only one pushed forward and those immediately around her left undisturbed. All of the facts disclosed are consistent with the belief that her misfortune was due to the disregard of some impatient fellow passenger. The speed of the train bore no relation to the accident.

Had plaintiff not been pushed it is not claimed that the train could have touched her. Moreover, the speed could not have been excessive, as the train stopped exactly where it was planned for it to stop. It is argued that much of the above comprises factual questions for the jury. Not so. There are facts, or more accurately absence of facts, which show that no issue as to negligence was presented. The judgment should be reversed and a new trial ordered.