■ RICHARD PEMBERTON, Appellant, v NEW YORK CITY TRANSIT AUTHORITY, Respondent. [758 NYS2d 29] —Order, Supreme Court, New York County (Robert Lippmann, J.), entered December 19, 2001, granting defendant's motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs or disbursements, the motion denied and the complaint reinstated.

This personal injury action against the Transit Authority is based on an incident that occurred on February 23, 1999 at approximately 7:20 P.M. at the 14th Street, Union Square subway station. Plaintiff, a 43-year-old male, five feet, eight inches tall and weighing 205 pounds, wearing a size nine shoe, was returning home from work, accompanied by a coworker, on the number 4 northbound express train. Plaintiff was standing alongside the third door of the first car, which was crowded at the time the train pulled into the 14th Street station. When the train stopped, plaintiff stepped out of the car to allow other passengers to alight. As he did so, his right foot fell into a gap between the exit door and the platform, which was curved at that point, causing his right leg, up to the middle of his thigh, to fall between the train and platform. As a result, plaintiff fell backwards on his buttocks, twisting his leg and knee and sustaining injury to his right knee that required surgery. Eventually, plaintiff was able to remove his leg from the gap and, with the aid of two unidentified males, was taken to a safe location. Plaintiff, who estimated the width of the gap to be more than six inches, observed that the gap between the platform and the door from which he exited progressively widened at the south side of the door. His coworker estimated the width of the gap to be approximately eight inches. It is

uncontroverted that there were no warning signs or announcements alerting passengers to the fact that the train was stopping on a curve or of the existence of a gap between the subway car and platform.

According to the Transit Authority's standard guidelines, the maximum allowable horizontal gap on a straight platform is six inches. The only standard for curved platforms with respect to horizontal gaps is that the gap between the train and platform be large enough to accommodate a train's passage without hitting the platform. The last preincident measurement survey of the 14th Street station gaps, taken on May 23, 1998, showed the horizontal gaps for the first car on the northbound trains to be 7.25 inches for the first door, 3.25 inches for the second door and 4.75 inches for the third door. The first postincident measurement, conducted on May 20, 2000, showed gaps of 6.00 inches for the first door, 3.00 inches for the second door and 6.00 inches for the third door, all for the R-62 model, the same model measured in May 1998. The difference in measurements between this model and the older model, on which plaintiff was riding, would be a quarter to half an inch greater in the case of the older model. Even with the two surveys, the Transit Authority's expert was unable to determine the measurement of the gaps on the date of the accident. Plaintiff's expert's measurements showed that the distance between the platform and the exit door would vary on the south edge of the third door from 5.3 inches to 6.8 inches depending on the model of train involved and where the motorman stopped the train. On his visit to the site, plaintiff's expert noted that out of seven trains that stopped, only one stopped at the 10-car marker while the other six went beyond it from two feet, eight inches to four feet, one inch. His measurements indicate that the gap at the third door of the first car would vary up to 1.4 inches on the average and up to 1.5 inches at the south side of the door depending on where the train stopped in relation to the 10-car marker and the model of the car measured. In the case of the older model car, the R-33, the gap measured 6.7 inches and 6.8 inches at the south side.*

The Transit Authority moved for summary judgment, arguing that the existence of a space between the subway car and platform, without more, did not constitute negligence if the space was no greater than reasonably required for the operation of the train. The IAS court, relying on *Gibson v New York Consol. R.R. Co.* (173 App Div 125 [1916]), granted summary

---

* The older model cars were painted red, the color of the car in which plaintiff was riding; the newer model, the R-62, is silver.

judgment dismissing the complaint, finding that plaintiff had failed to make out a prima facie case since the measurement survey of May 23, 1998 indicated that the gap at the location of the accident was only 4.75 inches. We reverse.

While a gap of six to eight inches does not, as a matter of law, establish negligence (see *Tomayo v Murray*, 173 Misc 728 [App Term, 1st Dept 1940]), plaintiff has, in our view, submitted sufficient evidence to raise an issue of fact as to the size of the gap and whether it constituted an unsafe condition. In that regard, the motion court erred in accepting, as a matter of law, a measurement of 4.75 inches since the subsequent 2000 survey showed the gap at the site of the accident to be at least 6.00 inches. Indeed, plaintiff's testimony that the gap was wide enough to accommodate his leg above the knee lends credence to the claim that the gap was greater than six inches. Plaintiff has also submitted sufficient evidence to raise a factual issue as to whether, assuming the prevailing conditions to be as claimed, the Authority had a duty to warn. *Gibson v New York Consol. R.R. Co. (supra)*, relied upon by the motion court, and the cases cited by the Transit Authority (see *Lang v Interborough R.T. Co.*, 193 App Div 56 [1920]; *Smith v Brooklyn Hgts. R.R. Co.*, 129 App Div 635 [1908]; *Trudnowski v New York Cent. R.R. Co.*, 220 App Div 503 [1927]) are clearly distinguishable since they are all cases decided after trial. In each, the court found that under the circumstances of the case a finding of negligence was not supported by the evidence. On this motion, plaintiff was not required to prove his case conclusively but only to present evidence in admissible form to demonstrate the existence of issues of material fact requiring a trial (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). This he has done. Concur—Saxe, J.P., Sullivan, Ellerin, Lerner and Gonzalez, JJ.