■ Sharon Jackson et al., Appellants, v New York City Transit Authority et al., Respondents. [818 NYS2d 32]—

Order, Supreme Court, New York County (Robert D. Lippmann, J.), entered April 18, 2005, which, upon reargument, adhered to its original order entered on or about December 10, 2004, granting defendants' motion to preclude plaintiffs' expert from testifying at trial, unanimously reversed, on the law, without costs, and the motion to preclude plaintiff's expert from testifying at trial denied. Appeal from order, same court and Justice, entered on or about December 10, 2004, unanimously dismissed, without costs, as superseded by the appeal from the subsequent order.

Defendants' evidence did not establish that they are immune

as a matter of law from the theory of liability plaintiff has proffered, that is, that they negligently purchased express buses which lacked a necessary safety feature to protect passengers, specifically, handholds or grab bars.

The doctrine of qualified governmental immunity serves to preclude second-guessing relating to the considered planning decisions of governmental bodies (*see Weiss v Fote*, 7 NY2d 579 [1960]; *Deringer v Rossi*, 260 AD2d 305 [1999]). For example, in *Weiss* (*supra*), the plaintiffs were injured in a motor vehicle accident which occurred at a controlled intersection; their theory of liability was that the traffic lights were negligently designed because the "clearance interval" between signal changes was too short (*id.* at 582-583). The Court of Appeals reversed the jury verdict in plaintiffs' favor, holding that the issue was not appropriate for jury determination because "a duly authorized public planning body ha[d] entertained and passed on the very same question of risk" (*id.* at 588). It explained that the decision of the municipal board regarding the clearance interval had been made after extensive studies of traffic conditions at that intersection, and it was improper to have a jury revisit the issue unless the board's decision was shown to be arbitrary or unreasonable, or that due care was not exercised in making the decision (*id.* at 586).*

In order to establish entitlement to qualified immunity, the defendant must demonstrate that a public planning body considered and passed upon the same question of risk as would go to a jury in the case at issue (*see Ernest v Red Cr. Cent. School Dist.*, 93 NY2d 664, 673 [1999]). In the present case, however, defendants fail to establish that this type of study, inquiry or investigation was made by any group or board or committee on behalf of defendants to consider the issue of the safety of passengers standing in, or walking through the bus and what, if any, type of grab bars, handholds, or other such features are necessary for passenger safety.

The affidavits of the Authority's Director of Research and Development, Jerry E. Higgins, do not, as defendants imply, establish that such a committee considered the safety issue and

---

* Qualified immunity has also been applied to the decision of whether to install traffic control devices (*see Affleck v Buckley*, 96 NY2d 553 [2001]; *O'Brien v City of New York*, 231 AD2d 698 [1996], *lv dismissed in part and denied in part* 89 NY2d 1026 [1997]; *Harford v City of New York*, 194 AD2d 519 [1993]); the city Transit Authority's policy of keeping subway car doors unlocked while train was moving (*see Zambrana v New York City Tr. Auth.*, 14 AD3d 23 [2004]; *McCord v City of New York*, 298 AD2d 438 [2002]); and its policy of having trains entering stations maintain their normal speed (*see Stevens v New York City Tr. Auth.*, 288 AD2d 460 [2001]).

decided that the cushioned rails of the overhead racks would be sufficient for the stability of walking or standing passengers. Rather, his initial affidavit described the complex process of how buses are considered by the Transit Authority. The process he described includes a "field evaluation" by a Transit Authority evaluation committee, a structural evaluation conducted by an independent engineering consultant, and an assessment of whether the buses meet the Transit Authority's technical specifications. However, nothing in Higgins's description of the process indicates that "a duly authorized public planning body . . . entertained and passed on the very same question of risk" as that claimed by plaintiffs. The only specific mention of the presence or absence of handholds or grab bars in Higgins's affidavit is his statement that the buses in question had "no grab bars, [but] standees or walkees can hold onto the cushioned overhead racks, or grasp the back of the soft seats." This is not enough to demonstrate the requisite consideration of the committee so as to entitle the Authority to qualified governmental immunity as a matter of law on this point.

The further affidavit by Higgins, submitted by defendants with their reply papers, failed to remedy what was lacking from the earlier submissions. Higgins's assertion that "the Authority deemed overhead racks with handrails as suitable handholds" does not suffice to establish as a matter of law that a public planning body considered and passed upon the question of risk that would be presented to the jury in this case. Similarly, although Higgins stated that the review process involved an assessment of whether the buses meet statutory requirements, including the regulation which requires suitable handholds *"unless overhead baggage racks provide a suitable handhold"* (*see* 17 NYCRR 721.4 [b] [3]), his statement failed to definitively establish as a matter of law that the required type of specific, focused consideration was given, and formal decision made, regarding whether the design of the particular buses in question included sufficient places for passengers to grab for balance if necessary.

Finally, the contents of plaintiff's notice of claim do not justify precluding plaintiffs from asserting that the absence of handholds or grab bars on defendants' bus contributed to the accident. The claim of general negligence asserted in the notice of claim is sufficient to encompass plaintiff's more specific claims regarding the absence of handholds or grab bars inside the bus. Moreover, plaintiff's General Municipal Law § 50-h hearing testimony three months after the accident, and the bill of particulars she served less than eight months after the ac-

cident, specifically set forth her claims regarding the absence of adequate grab bars. Thus, to the extent these claims were "new," they were made well within the year-and-90-day limitation period. So, any failure to include this particular information in the notice of claim did not impair defendants' ability to conduct a timely and meaningful investigation into the challenged claim (see *Goldman v New York City Health & Hosps. Corp.*, 186 AD2d 629 [1992]).

Defendants' motion should therefore have been denied. Concur—Tom, J.P., Saxe, Nardelli, Williams and Gonzalez, JJ.