■ MARY GLOVER, Respondent, v NEW YORK CITY TRANSIT AUTHORITY, Appellant. [876 NYS2d 40]—

Judgment, Supreme Court, Bronx County (Larry S. Schachner, J.), entered July 30, 2007, after a jury verdict and award of damages in plaintiff's favor, reversed, on the law, and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

Plaintiff injured her leg when she slipped in the space between the subway platform and a downtown No. 4 train at the 149th Street—Grand Concourse station in February 2001. After stepping onto the train with her right leg, plaintiff's left leg descended to a point above her knee and remained trapped for 15 or 20 minutes, until the subway car could be lifted by emergency equipment. Plaintiff claimed that defendant breached its duty of reasonable care, based on its own 1987 guidelines limiting the maximum tolerable gap between a subway car and a platform to six inches.

However, plaintiff failed to demonstrate defendant's breach of a duty of reasonable care to remedy an unsafe condition. Her testimony that her leg went into the gap above the knee, and that the circumference of her thigh measured just above the knee was more than 16 inches, was insufficient to prove that the space between the train and the subway platform was greater than six inches. Plaintiff's civil engineering expert testified that based on his measurements four years after the accident, he concluded that the diameter of her leg above the knee

was 6.68 inches. These measurements did not establish the size of the gap at the time of the accident. Even if the leg diameter exceeded six inches by a small amount, the wedging undoubtedly compressed it. That was why plaintiff's leg could not be easily extricated. Furthermore, defendant's measurements of the space between this platform and the doors of standard subway cars, both 9 months before and 15 months after the incident, demonstrated that the horizontal gaps at this point on the platform varied from 1.75 inches to 3.75 inches, and the vertical differential between platform and subway car floor was 4.5 inches. It should be noted that plaintiff's expert never measured any spaces at the station at issue, instead basing his testimony solely on plaintiff's leg measurements some four years after the accident. Thus, his contentions were at best speculative (*see Wilson v City of New York*, 271 App Div 1008 [1947], *revg* 64 NYS2d 149, 150 [App Term 1946, McLaughlin, J., dissenting]).

The dissent's reliance on *Pemberton v New York City Tr. Auth.* (304 AD2d 340 [2003]) is misplaced in that the Transit Authority's own measurements in *Pemberton* showed that the gap in some areas exceeded six inches; moreover, the trial court there had granted summary judgment dismissing the complaint prior to trial. Similarly, in *Johnson v New York City Tr. Auth.* (7 Misc 3d 42 [App Term 2005]) there was testimony by Transit Authority personnel that the space between the platform and train was well in excess of six inches, and that missing rubber boards contributed to an unsafe condition. Concur—Friedman, J.P., Sweeny, McGuire and Freedman, JJ.

Renwick, J., dissents in a memorandum as follows: Plaintiff commenced this action to recover damages for personal injuries sustained when she fell in a gap between a platform and a subway car. At trial, defendant tacitly conceded that a gap greater than six inches would constitute a dangerous condition requiring remedial action under these circumstances. The majority, however, now holds that the trial court erred in denying the post-trial motion to dismiss the action on the issue of liability because plaintiff allegedly failed to produce sufficient evidence that the gap in which she fell exceeded six inches. I respectfully dissent because the majority's determination is based upon an erroneous evaluation of the evidence adduced at trial.

A thorough review of the evidence adduced at trial should make it abundantly clear that the jury verdict has ample support in the record. During the liability phase of the bifurcated trial, plaintiff presented the testimony of several witnesses,

including her own. Plaintiff testified that her subway accident occurred on the morning of February 28, 2001, when she was on her way to work at the New York Mercantile Exchange, where she was employed as a supervising financial analyst. That morning, plaintiff, who lived in the Bronx, took a taxi to the subway station at 149th Street and the Grand Concourse, with the intention of taking the No. 4 train to work. Plaintiff, who weighed between 270 and 280 pounds, both at the time of her accident and at trial, was wearing a pair of size 10 Easy Spirit walking shoes with a ridged sole.

Upon arriving at the station, she went down the steps to the platform which was not yet crowded. The train was waiting on the middle track, which was straight. Plaintiff walked up to the second or third subway car, where there were available seats. As she began to enter through the first door, which was not blocked by any other passengers, she stepped onto the train with her right foot, then picked up her left foot to follow. However, her left foot came down into empty space, as "there was no train there." Her left foot sank between the train and the platform, initially up to about her ankle, then up to her calf, ultimately becoming trapped at a point above her knee at approximately midthigh.

Although she could not determine by mere observation how wide the gap was, when plaintiff looked down at her trapped leg, she observed that the gap between the subway car and the platform was "pretty wide." She surmised that the gap must have been greater than six inches because it went up her to thigh, which was wider than six inches; she wears a $9^1/2$-inch ankle bracelet. Other riders reacted by running toward plaintiff while yelling to the train conductor not to close the doors. Their movement caused the train to press up against her leg even harder, until it felt like "it was going to pop." Eventually, emergency rescuers used an air bag to lift up the train and extricate plaintiff's leg.

Plaintiff called as a witness Flander Julien, a civil engineer who was employed by defendant on the date of the accident, as well as at the time of trial. His duties included supervising a crew that undertook measurements of the distance between trains and platforms when a train is stopped at a station. According to Julien, "gap measurements" are taken approximately every two years, using a train with no passengers and only a limited number of Transit Authority workers. He explained that the purpose of taking these measurements is "customer safety," and that gaps exceeding six inches from a straight platform require remedial action under the Transit Authority

guidelines. Those guidelines state that the "optimal" horizontal gap for rehabilitated stations is 3¹/₂ inches.

Prior to plaintiff's accident, gap measurements were last taken at the southbound track of this station on May 20, 2000, and recorded as between 1.75 and 3.5 inches at various door openings along the train. Those measurements were taken using a model R-62 train, which differs from the model R-33 involved in this case but reportedly had the same dimensions. No gap measurements were taken at this station on the date of the accident. The next measurements were taken on June 22, 2002, 16 months after the accident. The gap was this time measured as ranging from 1.75 to 3.75 inches along the length of the train. Julien explained that gaps normally fluctuate over time and can become wider or narrower.

Finally, plaintiff called Nicholas Bellizzi, a professional engineer who had previously worked for four years in defendant's engineering division.* Before testifying at trial, Bellizzi reviewed photographs of the station in question, the deposition testimony given by plaintiff and Julien, and defendant's accident reports. He also measured the length of plaintiff's foot, the length of her shoe, and the circumference of her left leg at the knee and above the knee. The circumference of plaintiff's leg at the knee was 19.5 inches, and above her knee was 21 inches. He then applied a mathematical formula to calculate the diameter of her leg, which was 6.2 inches at the knee and 6.7 inches above it. Her shoe length was 11 inches. He noted that the area around the knee is less pliable and soft, whereas the area above the knee, on the fleshy part of the leg, is more likely to compress if squeezed. In the case of the leg becoming wedged, Bellizzi explained, the fleshy top portion would push upward and actually become larger. Based upon his measurements, plaintiff's weight, and the details of the accident, Bellizzi opined, with a reasonable degree of engineering certainty, that the gap must have exceeded six inches.

Defendant presented no witnesses at the liability phase of the trial. Instead, at the conclusion of plaintiff's presentation, defendant moved for a directed verdict on the ground that plaintiff had failed to offer sufficient evidence that the gap in which she fell was wider than the accepted limit of six inches. The trial court denied the motion. After the jury returned a verdict, finding defendant negligent in the maintenance of the platform and that such negligence was a substantial factor in causing the ac-

---

* Mr. Bellizzi had a bachelor's degree in civil engineering and a master's degree in transportation engineering. He also completed all the requirements for a Ph.D. in transportation engineering, except for his dissertation.

cident, defendant renewed its motion to dismiss. The trial court denied the motion, and the case proceeded to the damages phase of the bifurcated trial. A second jury awarded plaintiff damages of $700,000 for past pain and suffering and $800,000 for future pain and suffering. This appeal followed.

On a post-trial motion for judgment as a matter of law, the court must determine from the evidence adduced at trial whether there is "no valid line of reasoning and permissible inferences which could possibly lead rational [jurors] to the conclusion" they reached on liability (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). A court must exercise considerable caution in exercising its discretionary power to set aside a jury verdict (*Nicastro v Park*, 113 AD2d 129, 133 [1985]). "The credibility of the witnesses, the accuracy of their testimony, whether contradicted or not, present clear issues of fact to be resolved by the jury" (*White v Rubinstein*, 255 AD2d 378 [1998]). The court must view the evidence in a light most favorable to the nonmovant (*Calvaruso v Our Lady of Peace R.C. Church*, 36 AD2d 755 [1971]). Where "the evidence is such that it would not be utterly irrational for a jury to reach the result it has determined upon, and thus a valid question of fact does exist, the court may not conclude that the verdict is as a matter of law not supported by the evidence" (*Cohen*, 45 NY2d at 499).

With regard to a common carrier's duty of care, courts have recognized that some space between the platform and the car is necessary because the "cars must not scrape the platform of the station, and must be far enough away to allow for the oscillation and swaying of the train" (*Ryan v Manhattan Ry. Co.*, 121 NY 126, 131 [1890]; *see also McKinney v New York Consol. R.R. Co.*, 230 NY 194, 199 [1920]). Accordingly, the existence of a space between the platform and the car, necessary to the operation of the train, does not, in and of itself, constitute negligence (121 NY at 136-137; *Iorio v Murray*, 256 App Div 512, 514 [1939]; *Woolsey v Brooklyn Hgts. R.R. Co.*, 123 App Div 631, 633 [1908]; *Tomayo v Murray*, 173 Misc 728 [App Term 1940]). Nonetheless, a common carrier is "charged with the duty of using due care to provide proper and safe means of getting from the platform of the cars to the platform of the station" (*Boyce v Manhattan Ry. Co.*, 118 NY 314, 318 [1890]). Where the opening may present a danger, the carrier has the obligation to take some reasonable precautionary measures for the safety of the passengers (*Ryan*, 121 NY at 132; *Boyce*, 118 NY at 318; *Woolsey*, 123 App Div at 633).

In this case, plaintiff's evidence at trial presented issues of fact as to whether the space between the platform and the

subway car constituted a danger that defendant negligently failed to repair, or otherwise failed to undertake reasonable measures for the safety of the passengers. Initially, it should be pointed out that defendant's own employee, who testified on plaintiff's behalf, acknowledged that pursuant to the Transit Authority's traffic regulations, any gap measurement in excess of six inches is unsafe to passengers and requires remedial action. His testimony went unrefuted by defendant, whose own regulations thus provided the jury "some evidence of negligence" (*Danbois v New York Cent. R.R. Co.*, 12 NY2d 234, 239 [1963]). While a gap of six inches or more does not as a matter of law establish negligence, the reasonableness of a gap in excess of six inches presented a question for the jury (*see Pemberton v New York City Tr. Auth.*, 304 AD2d 340 [2003]).

Moreover, contrary to the majority's conclusion, plaintiff presented evidence sufficient for a rational juror to conclude that the space between the platform and the subway car was greater than six inches at the time of the accident. The facts of the accident itself provided sufficient proof that the space was greater than six inches. The jury heard evidence that plaintiff weighed between 270 and 280 pounds at the time of the accident, that her size 10 shoes were longer than 10 inches and that she was wedged in the gap up to her thigh. Under the circumstances, it was within the jury's province to infer that the concededly heavy woman's leg was large enough to demonstrate that the gap was greater than six inches, since her leg was able to fit easily within the space (*see id.* at 342 ["(P)laintiff's testimony that the gap was wide enough to accommodate his leg above the knee lends credence to the claim that the gap was greater than six inches"]; *Johnson v New York City Tr. Auth.*, 7 Misc 3d 42, 45 [App Term 2005] ["There was also a rational basis for the jury to draw the inference that a dangerous condition was created, since plaintiff's fall caused him to be wedged in between the car and the platform up to his mid-thigh"]). Significantly, this inference is buttressed by the engineering expert's opinion, based on the description of the accident and the measurement of plaintiff's dimensions, that plaintiff's leg was most likely too large to fit into a space that was less than six inches.

The majority holds that neither plaintiff's testimony nor the expert's opinion, alone or combined, is sufficient to prove that the gap was greater than six inches. What the majority overlooks is that plaintiff unequivocally testified that her weight at the time of the accident was the same as her weight at trial, which went unchallenged. Plaintiff's dimensions at trial, which the jury observed and the engineering expert relied upon for render-

ing his opinion, were thus an adequate representation of what they were when the accident took place.

Furthermore, while defendant's measurements at the station twice revealed that the gap was less than six inches, such evidence was not conclusive on the issue, but rather, raised questions of fact for the jury to resolve. The test to be applied in considering a motion to set aside a jury verdict (*see Blum v Fresh Grown Preserve Corp.*, 292 NY 241, 245 [1944]) is not based on weighing the evidence but rather whether the court can find that "by no rational process could the fact trier base a finding in favor of the party moved against upon the evidence presented" (*Aetna Cas. & Sur. Co. v Garrett*, 37 AD2d 750, 751 [1971]). In this case, it cannot be said that the jury acted irrationally by rejecting defendant's measurements of the gap when faced with the particular measurements of plaintiff and circumstances of her subway accident. Moreover, the jury could have had doubts about the adequacy of defendant's measurements, since they were taken somewhat remote in time from the accident, 9 months before and 16 months afterward.

The issues having been properly submitted to the jury for factual determination, it is improper for the majority to conclude that the verdict finding defendant negligent was not supported by the evidence as a matter of law. On the contrary, the evidence, viewed in the light most favorable to plaintiff, was sufficient for a rational juror to conclude that the space between the platform and the subway car was greater than six inches at the time of the accident, leading to a determination of liability. Therefore, the court properly denied defendant's post-trial motion for a dismissal of the action.