■ GERASIMOS TZILIANOS, Appellant, v NEW YORK CITY TRANSIT AUTHORITY, Respondent. [936 NYS2d 159]—

Plaintiff allegedly sustained personal injuries when he fell while exiting a train at the 59th Street subway station. Defendant argued that the measurements of the horizontal and vertical gaps between the train and the platform did not exceed the six-inch maximum standard set forth in its internal operating rules, and thus, it was not negligent, as a matter of law. Defendant failed to establish either that compliance with its six-inch gap standard proves that it was not negligent or that it is entitled to qualified immunity.

In support of its argument that it is entitled to qualified immunity, defendant submitted only a self-generated internal memorandum regarding the maximum permissible gap without citing any basis for the six-inch standard contained therein. This memo from the NYCTA's former president does not set forth what if any study was conducted to determine what is safe for the traveling public before adopting the six-inch gap standard, and thus, it cannot be relied upon by the NYCTA (*Sanchez v City of New York*, 85 AD3d 580 [2011]; *see Jackson v New*

*York City Tr. Auth.*, 30 AD3d 289 [2006]). In *Jackson*, this Court enunciated that, "[i]n order to establish entitlement to qualified immunity, the defendant must demonstrate that a public planning body considered and passed upon the same question of risk as would go to a jury" (*id.* at 290). Five years later, we again held that the Transit Authority had failed to demonstrate "its entitlement to qualified immunity since it submitted only its own memorandum stating that the maximum permissible horizontal gap . . . is six inches . . . Defendant presented no evidence that a 'public planning body considered and passed upon the same question of risk' that would go to a jury" (*Sanchez*, 85 AD3d at 580, quoting *Jackson* at 290).

Contrary to defendant's argument, we did not hold in *Glover v New York City Tr. Auth.* (60 AD3d 587 [2009], *lv denied* 13 NY3d 706 [2009]), that defendant's compliance with its own internal six-inch gap standard established non-negligence as a matter of law. In that case, the issue was whether the plaintiff produced competent evidence of the size of the gap (*Glover* at 587-588). The determination of the Court, namely reversal and dismissal of the complaint, was based upon the speculative and insufficient evidence of the width of the gap presented by the plaintiff in an attempt to show that the gap exceeded the six-inch standard. The Court, however, did not hold that compliance with the six-inch gap policy established the NYCTA's non-negligence as a matter of law.

In any event, even if we assumed defendant's gap standard is reflective of an industry standard or a generally accepted safety practice, the fact that it complied with its own internal operating rule constitutes some evidence that it exercised due care, but is not conclusive on the issue of liability. A jury must be satisfied with the reasonableness of the common practice, as well as the reasonableness of the behavior that adhered to the practice (*see Trimarco v Klein*, 56 NY2d 98, 105-107 [1982]). Therefore, defendant's compliance with its own internal standard is not a sufficient basis, standing alone, upon which to grant summary judgment in its favor. Concur—Mazzarelli, J.P., Catterson, Moskowitz, Renwick and Abdus-Salaam, JJ.