■ TAMARA HOWELL, Respondent-Appellant, v NEW YORK CITY TRANSIT AUTHORITY, Appellant-Respondent. [998 NYS2d 174]—

Order, Supreme Court, Bronx County (Faviola A. Soto, J.), entered August 30, 2013, which denied defendant's CPLR 4404 motion to set aside the verdict finding it 100% liable in negligence for plaintiff's injuries, and granted its motion to set aside the jury's damages award and ordered a new trial on damages, unanimously modified, on the law, to grant defendant's motion to set aside the verdict, and otherwise affirmed, without costs. The Clerk is directed to enter judgment dismissing the complaint.

Plaintiff, a large woman, was standing near the doors inside a crowded number 4 express train. When it stopped, she attempted to back out and pivot sharply to the right, so that she could face and reenter the train after other passengers exited. As she attempted to do so, plaintiff noticed a gap between the train and the platform and believed that she could clear it. Unfortunately, she did not succeed and her leg became wedged in the gap at a point two inches below the knee.

The jury found that defendant was negligent and that its negligence was a substantial factor in causing the accident. The jury also found that plaintiff was not negligent. However, "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [persons] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]).

The existence of a gap between a train and a platform, necessary to the operation of the train because the cars must not scrape the platform and must be far enough away to allow for the oscillation and swaying of the train, is insufficient, in and of

itself, to establish defendant's negligence (*see Ryan v Manhattan Ry. Co.*, 121 NY 126, 131 [1890]; *Johnson v New York City Tr. Auth.*, 7 Misc 3d 42, 44 [App Term, 2d Dept 2005]). Here, plaintiff failed to establish that the size of the gap between the train and the platform was unreasonably large, or that defendant breached its duty of care (*see Glover v New York City Tr. Auth.*, 60 AD3d 587 [1st Dept 2009], *lv denied* 13 NY3d 706 [2009]; *Williams v New York City Tr. Auth.*, 31 AD3d 631, 632 [2d Dept 2006]).

In *Glover*, the plaintiff claimed that the Transit Authority breached its duty of care by allowing the gap between the platform and the train to exceed six inches, the maximum tolerable gap between a subway car and a platform under the Transit Authority's internal policies. The plaintiff's engineering expert testified that the diameter of the plaintiff's leg above the knee was 6.68 inches and therefore, the gap must have exceeded six inches.

This Court reversed, ruling that the verdict was based upon speculative and insufficient evidence, which did not establish that the gap exceeded six inches at the time of the accident or that the Transit Authority breached its duty of care. The plaintiff's engineering expert based his testimony on leg measurements, taken four years after the accident, and never measured the gaps at the station. Furthermore, a violation was not shown by the measurement of plaintiff's leg diameter as 6.68 inches because this did not account for compression. In contrast, the Transit Authority's engineers measured the gap nine months before and 15 months after the accident and showed that it varied between 1.75 inches and 3.75 inches.

Here, plaintiff estimated that the gap, based on her visual observations, was 12 inches. However, this estimate may have been influenced by the measurement of her leg by one of her doctors, who found her calf to have a circumference of 20 inches, and defense counsel demonstrated, with the use of a ruler, that a 12-inch gap would have greatly exceeded the width of plaintiff's calf. Significantly, plaintiff did not know the width of her foot and admitted that she could not be certain as to the size of the gap. Nor did she produce any expert testimony as to the size of the gap or defendant's alleged negligence.

On the other hand, a road car inspector for defendant testified that he did a "rough estimate" of the gap after the accident and found it to be "three-and-a-half" inches, which "wasn't that big of a gap." Defendant's professional engineer and "Director of Gap Management" testified that when her crew had visited the station in 2004 and 2013, the horizontal gap

measured 3.75 inches. A police officer testified that she could not help plaintiff get her leg out because the space the leg was trapped in was "really tight." The officer did not recall how much space was between plaintiff's leg, the train, and the platform, but it was not "that much."

The Transit Authority's Director of Track Engineering, testified that a horizontal gap between the platform and the car was necessary to "assure that the car, while it's traveling on the track, never touches the platform," i.e., "to prevent physical contact between the car body and the platform itself." He also stated that defendant's policies permitted a "nominal" gap to exist of no more than six inches between the train and the platform's ledge. In arriving at this permitted maximum gap, the Clearance Committee consulted the practices of other subway systems and drew on the guidance of the International Union of Public Transport, a clearinghouse of worldwide transit practice and information.

Plaintiff's estimate that the gap measured 12 inches, from which she ultimately wavered, is speculative and insufficient to demonstrate the size of the gap or defendant's negligence (see *Trudnowski v New York Cent. R.R. Co.*, 220 App Div 503 [4th Dept 1927] [rejecting a passenger's self-serving description of a huge gap, where the objective measurements suggested a far smaller opening]). Nor could plaintiff reconcile a 12-inch gap with the circumference of her calf. Had the gap measured 12 inches, plaintiff's calf would have measured approximately 36" around, not the approximately 20" her doctor reached when he measured her calf three years after the accident. Furthermore, as we noted in *Glover*, human tissue is subject to compression and plaintiff's description of her leg as large did not rule out a relatively narrow gap.

Plaintiff did not produce any expert testimony and could not challenge defendant's conclusion that a six-inch gap sufficed to protect both the integrity of the station platforms and the safety of passengers leaving and entering its trains. Indeed, with no expert, plaintiff could not prove that the gap, whether it was 12 inches or something smaller, posed a hazard, given the realities of train traffic and engineering. Concur—Tom, J.P., Sweeny, Andrias, Moskowitz and Gische, JJ.