| |
|---|
| **Rivera v Port Auth. of N.Y. & N.J.** |
| 2025 NY Slip Op 30843(U) |
| March 17, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 155115/2020 |
| Judge: Richard Tsai |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. RICHARD TSAI                          PART                    21

                                         *Justice*

-------------------------------------------------------------------------------X

MARCUS ANTHONY RIVERA,                             INDEX NO.          155115/2020

                        Plaintiff,                 MOTION DATE        04/15/2024

            - v -                                  MOTION SEQ. NO.        006

PORT AUTHORITY OF NEW YORK AND NEW JERSEY,
SKANSKA USA INC.,SKANSKA USA BUILDING INC., and            **DECISION + ORDER ON**
SKANSKA/WALSH JOINT VENTURE,                                      **MOTION**

                        Defendants.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document numbers (Motion 006) 33-42, 57, 94-122

were read on this motion to/for                   PARTIAL SUMMARY JUDGMENT        .

Plaintiff Marcus Anthony Rivera alleges that he was injured working on a construction project at LaGuardia Airport in Queens, New York. Plaintiff moves for partial summary judgment on the issue of liability against defendants with respect to his second cause of action based on Labor Law § 240 (1). Defendants oppose the motion.

## BACKGROUND

Defendant Port Authority of New York and New Jersey is the lessee of the premises (*see* plaintiff's Exhibit 2 in support of motion, answer ¶ 5 [NYSCEF Doc. No. 99]). Defendants Skanska USA Building Inc. (Skanska Building) and others were in a joint venture on the project (collectively, Skanska/Walsh Joint Venture) (*id.* ¶¶ 4,8; *see* plaintiff's Exhibit 8 in support of motion, joint venture agreement [NYSCEF Doc. No. 105]). Skanska Building was the managing party of the joint venture (*see* joint venture agreement ¶ 5.1).

Plaintiff was employed by nonparty Navillus Contracting (*see* plaintiff's Exhibit 5 in support of motion, plaintiff tr at 15 [NYSCEF 102]). He alleges the following. On December 6, 2019, Frank Reidy, a Navillus supervisor, assigned plaintiff and co-workers to move a 2500-pound single person mechanical scissor lift to another part of the premises (plaintiff tr at 18, 21, 23, 26-27, 50). The lift was a Genie model, 20 feet high (*id.* at 53). Plaintiff stated that the lift had to be moved over a concrete curb 8 ½ inches high and 4 inches wide (plaintiff tr at 34).

On the instructions of Reidy, plaintiff made a ramp using plywood sheets and planks to move the lift over the curb (*id.* at 28-29, 35). The planks went up from the floor, rested on top of the curb, and came down on the other side of the curb (*id.* at 36).

155115/2020   RIVERA, MARCUS ANTHONY vs. PORT AUTHORITY OF NEW YORK                    Page 1 of 7
Motion No. 006

1 of 7

[* 1]

Reidy directed the workers to push the lift upwards on the ramp (*id.* at 37). Reidy stood to the side holding the lift controller and driving the lift (*id.* at 42-43). The front wheels of the lift passed the curb and got stuck (*id.* at 38). The front wheels were not touching the ramp; they were in the air, while the back wheels of the lift were still on the ramp (*id.* at 41, 44). Reidy directed plaintiff to grab a 2x4, go behind the lift, put the 2x4 under the lift, and raise the 2x4 up to move the lift forward (*id.* at 43).

From behind the lift, plaintiff was able to raise it 6 to 8 inches and move it forward a couple of inches (*id.* at 47, 48, 54). Two other workers had their hands on the lift guiding it up the ramp as Reidy controlled it with the controller (*id.* at 55-56). The lift fell back/rolled back and snapped the 2x4 out of plaintiff's hands (*id.* at 52, 54). Plaintiff stated that the 2x4 "was forcefully ripped out of my hands causing my back to pop three different times" in his lower back (*id.* at 58, 59).

According to plaintiff, he immediately walked away (*id.* at 60). When asked if plaintiff talked to Reidy, plaintiff answered, "Yes. I told him as soon as I saw his face that I -- that my back was hurting" (*id.* at 61). "He accompanied me and walked me over to the shanty -- well, his office, Berchum's office" (*id.* at 61). Berchum was plaintiff's foreman (*id.* at 17). Plaintiff told Reidy and Berchum how he got hurt (*id.* at 61). This happened approximately 10 to 15 minutes after the accident (*id.* at 62). Berchum called the shop steward to take plaintiff to the medic (*id.* at 62). The medic felt plaintiff's back, gave him Motrin, and told him to go home and ice his back (*id.* at 62).

Plaintiff testified that

"Frank walked over to us and instructed us to go into a room to get a lift out, so after that, I was instructed by Frank to move the lift over a makeshift ramp that we had to build. The lift got stuck at the top of the ramp. It fell backwards, and as I was trying to lift and brace it, I hurt myself. That was approximately 11:00 in the morning" (plaintiff tr at 23).

At his deposition, Anthony Rosano testified that he is an Environmental health and safety manger employed by Skanksa Civil, Inc., which is one of the joint venture partners of the Skanska/Walsh Joint Venture (*see* plaintiff's Exhibit 7 in support of motion, Rosano tr. at 12, 17 [NYSCEF Doc. No. 104]). According to Rosano, he conducted daily walk-throughs of the airport project (*id.* at 59). He had authority to stop the work if he saw a safety issue and so did everyone else, including the workers (*id.* at 60).

Rosano testified that, on December 6, 2019, plaintiff's foreman or assistant foreman called Rosano to report an incident (*id.* at 26). Rosano went to the location and talked about the incident with plaintiff and "Berchem [sic] Friday," a Navillus foreman (*id.* at 27, 29). Plaintiff told Rosano that he used his back to push or lift a scissor lift and that he felt a sudden pain in his back while doing so (*id.* at 27). Rosano was told that the controls were being operated while plaintiff was using a 2x4 plank behind the lift to hoist it (*id.* at 40). Rosano further testified that he had a conversation

**155115/2020   RIVERA, MARCUS ANTHONY vs. PORT AUTHORITY OF NEW YORK**          **Page 2 of 7**
**Motion No. 006**

2 of 7

"with the foreman, regarding the creation of the ramp to facilitate the lift over the curbs" and that he told the foreman that they should have stopped and "created a better approach – a better ramp" (*id.* at 46).

Rosano testified that he took a written statement from plaintiff and that Skanska maintained an electronic report on the incident (*id.* at 31-32). Rosano prepared the report, which was dated December 10, 2019 (*id.* at 33, 35-36, 38). He met with plaintiff "three to four times after the incident" and also interviewed Berchem and Reidy for the report (*id.* at 35, 39). The report included Rosano's suggestion on how to prevent such future incidents (*id.* at 42). Rosano testified that "they should have built a longer or larger ramp" (*id.* at 44-45).

Rosano did not recall if he spoke to Reidy on December 6, the day of the incident, or December 10 (*id.* at 39). Rosano said that Reidy told him that they were trying to reposition the scissor lift over the four-inch concrete curb in the mechanical room and that plaintiff was hurt while using a 2x4 (*id.* at 39-41). Rosano asked Reidy if the lift had slipped back, and Reidy said no (*id.* at 41). Rosano testified that the curb was four or five inches high; he did not measure it (*id.* at 58).

## PROCEDURAL HISTORY

On September 17, 2021, plaintiff filed an order to show cause to hold Francis Reidy and another person in contempt of court for failing to comply with plaintiff's subpoenas for a nonparty deposition (Motion Seq. No. 003 (*see* NYSCEF Doc. Nos. 33-42). According to plaintiff's counsel, a subpoena was personally served on Francis Reidy on July 29, 2021 to appear at the office of plaintiff's counsel on August 31, 2021, and he did not comply (*see* NYSCEF Doc. No. 35, affirmation of plaintiff's counsel ¶¶ 2, 3, 11).

By decision and order dated and entered January 19, 2022, the Supreme Court justice who was previously assigned to this matter denied plaintiff's order to show cause, without prejudice and with leave to renew (*see* NYSCEF Doc. No. 57). The decision states, in relevant part, "During the conference on this matter on January 18, 2022, the parties agreed to make attempts to procure the cooperation of the subject target witnesses without resort to judicial intervention on the matter" (*id.*).

## DISCUSSION

Summary judgment is granted where the moving party has tendered sufficient evidence to demonstrate the absence of any material issue of fact (*Vega v Restani Const. Corp.*, 18 NY3d 499, 503 [2012]). Once the moving party makes the required showing, the opponent of the motion must produce admissible evidence showing that there exists a material issue fact which requires determination at trial (*Pemberton v New York City Tr. Auth.*, 304 AD2d 340, 342 [1st Dept 2003]). The court evaluates the motion in the light most favorable to the party opposing the motion (*Jacobsen v New York City Health and Hosps. Corp.*, 22 NY3d 824, 833 [2014]). Mere conclusions of law

155115/2020   RIVERA, MARCUS ANTHONY vs. PORT AUTHORITY OF NEW YORK                    Page 3 of 7
Motion No.  006

3 of 7

[* 3]

or fact are insufficient to defeat a motion for summary judgment (*Banco Popular North Am. v Victory Taxi Mgt., Inc.*, 1 NY3d 381, 383-384 [2004]).

Under Labor Law § 240 (1), known as the Scaffold Law, owners and contractors engaged in construction must furnish devices "so constructed, placed and operated as to give proper protection to a person employed in the performance of the labor." The statute lists "scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes" as protective devices.

The purpose of Labor Law § 240 (1) is to protect workers "from the pronounced risks arising from construction work site elevation differentials" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]) and to prevent the types of accidents in which the protective device proves inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person (*John v Baharestani*, 281 AD2d 114, 118 [1st Dept 2001]). To prevail on a claim under the Scaffold Law, the injured worker must show that the absence or inadequacy of a protective device created a foreseeable risk that the task the worker was engaged in would result in the worker being injured and that said risk was due to elevation differentials (*Clemente v 205 West 103 Owners Corp.*, 180 AD3d 516, 517 [1st Dept 2020]).

Generally, the statute has applied where the risk to the worker arises because the elevation level of the work or of the materials being hoisted or secured differs from the elevation level of where the worker is situated (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]). Whether a plaintiff is entitled to recovery under Labor Law § 240 (1) requires a determination of whether the injury sustained is the type of elevation-related hazard to which the statute applies" (*Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.,* 18 NY3d 1, 7 [2011]).

Here, plaintiff establishes that an object was being moved up a ramp, that there was no protective device or that the ramp was not adequate to provide protection, that there was an elevation difference between where plaintiff was and how the object was placed, and that the object fell or slipped downward and struck plaintiff. Plaintiff's testimony establishes prima facie that § 240 (1) was violated (*see Garcia v 122-130 E. 23rd St. LLC*, 220 AD3d 463, 463-464 [1st Dept 2023]; *Jerdonek v 41 W. 72 LLC,* 143 AD3d 43, 45 [1st Dept 2016]).

Defendant argues that plaintiff has not met his burden of proving that the injury arose from a physically significant elevation differential, as the lift fell backwards a de minimis distance. The height differential was as little as four inches, according to Rosano.

Defendant's argument that the injury did not arise from a significant elevation differential is without merit. Liability under § 240 (1) is not precluded even where the injured worker and the base of the falling object stand at the same level, as long as the

155115/2020   RIVERA, MARCUS ANTHONY vs. PORT AUTHORITY OF NEW YORK
Motion No.  006

Page 4 of 7

4 of 7

[* 4]

plaintiff was injured while engaged in work that poised a substantial gravity-related risk (*Wilinski*, 18 NY3d at 9), that is, where the object being worked upon is heavy enough to generate significant force (*Grigoryan v 108 Chambers St. Owner, LLC,* 204 AD3d 534, 534 [1st Dept 2022]; *Encarnacion v 3361 Third Ave. Hous. Dev. Fund Corp.,* 176 AD3d 627, 628 [1st Dept 2019]; *and see Rivas v Seward Park Hous. Corp.*, 219 AD3d 59, 63 [1st Dept 2023]).  In determining whether an elevation differential is "physically significant" or "de minimis," the weight of the object that struck plaintiff, the amount of force that it was capable of generating, and the distance that the object traveled to reach plaintiff must be considered (*see Runner*, 13 NY3d at 605).

Assuming that the curb was 4 inches high, as defendant claims, plaintiff is not foreclosed from relief under the statute.  Given the weight of the scissor lift, the height differential between where plaintiff was standing and where the lift was positioned was not de minimis.  Even the short decline of a 2,500 pound lift could generate enough force to cause serious injury.  Plaintiff establishes that the lack of a device or the inadequacy of the provided device to protect against the elevation-related hazard created by the lift was a proximate cause of the injury and that the risk of injury was foreseeable (*see Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 268-269 [1st Dept 2007]; *see also Mendoza v Highpoint Assocs., IX, LLC,* 83 AD3d 1, 11 [1st Dept 2011]).  Defendants fail to establish that plaintiff's work did not subject him to a risk involving a physically significant elevation differential.

Next, defendants contend that the incident never happened.  In his opposing affidavit, Reidy states, in relevant part:

"8. After the ramps were in place on both sides of the curb the Navillus crew, including myself and Mr. Rivera, moved the scissor lift over the curb from one side to the other, without incident. At no time while the scissor lift was being moved from one side of the curb to the other did it roll backwards or fall backwards nor did it strike Mr. Rivera.

9. While moving the scissor lift over the curb we were all close to each other including myself and Mr. Rivera.

10. There were no issues or problems that came up while we were moving the scissor lift from one side of the curb to the other, as well as over the top of the curb" (defendants' Exhibit A in opposition, Reid aff ¶¶ 8-10 [NYSCEF Doc. No. 113]).

Rosano avers that Reidy never told him that plaintiff was hurt while they were moving the scissor lift (*see* defendants' Exhibit B in opposition, Rosano aff ¶ 6 [NYSCEF Doc. NO. 114).  According to Rosano, Reidy told him that, after the scissor lift was already moved, plaintiff complained later in the day that he got hurt while moving the lift (*id.* ¶ 7).

In reply, plaintiff argues that since Reidy refused to comply with the subpoena, his affidavit should be disregarded (*see* reply affirmation of plaintiff's counsel ¶¶ 23-32

155115/2020   RIVERA, MARCUS ANTHONY vs. PORT AUTHORITY OF NEW YORK          Page 5 of 7
Motion No.  006

5 of 7

[NYSCEF Doc. No. 118]).  Plaintiff's counsel points out, "Three years after being served with a subpoena and refusing to appear for a deposition noticed by plaintiff, Mr. Reidy has apparently now surfaced to cooperate with defendants and claims the incident did not occur" (reply affirmation of plaintiff's counsel ¶ 8 [NYSCEF Doc. No. 118]).  Plaintiff argues that Rosano's affidavit should be disregarded because it contradicted his deposition testimony (reply affirmation of plaintiff's counsel ¶ 8 [NYSCEF Doc. No. 118]), and that Reidy's affidavit should be disregarded for the same reason (*id.*).

The court disagrees.

The Appellate Division, Fourth Department's decision in *Vikk-Lynn A. v Zewin* (198 AD3d 1342, 1343 [4th Dept 2021]) is instructive. There, the plaintiff sought damages for injuries sustained by her child when he was attacked by two dogs harbored by tenants living in a house owned by defendant.  The defendant moved for summary judgment dismissing the complaint, on the ground that he was not aware that dogs were on the property, or that those dogs had vicious propensities.  In opposition to the motion, the plaintiff submitted the affidavits of two nonparty witnesses.  Supreme Court precluded those affidavits "as a remedy for plaintiff's failure to disclose them during discovery" and granted the defendant's motion (*id.* at 1343).

On appeal, the Appellate Division, Fourth Department ruled that the court abused its discretion in precluding the affidavit of one of the witnesses.  The Appellate Division reasoned, "Defendant knew of [the nonparty witness] as a person of interest, which is why counsel sought to depose her approximately four months prior to making the motion, and defendant did not seek the assistance of the court to compel Davis's production" (*id.* at 1344).

Like the defendant in *Zewin*, plaintiff knew of Reidy as a witness, which why plaintiff sought to depose Reidy.  Although plaintiff sought the assistance of the court to compel Reidy's appearance, plaintiff's motion was denied, with leave to renew. Thereafter, similar to the defendant in *Zewin*, plaintiff did not bring another motion to compel Reidy to appear for a non-party deposition and did not seek any order to preclude Reidy's testimony.  As *Zewin* instructs that preclusion under similar circumstances would be an abuse of discretion, the court therefore does not preclude Reidy's affidavit from consideration in opposition to the motion.

Plaintiff's reliance upon *Cherfas v Wolf* (20 Misc 3d 1118[A], 2008 NY Slip Op. 51397[U] [Sup Ct, Kings County 2008]) is misplaced. To the extent that *Cherfas* reasoned that "there are strong policy considerations supporting holding non-parties to the same standard as parties," that case is inapposite, as the issue presented in *Cherfas* was whether a non-party non-domiciliary had waived his defense for lack of personal jurisdiction in a post-judgment matrimonial proceeding, when that non-party witness had voluntarily testified on previous dates.  *Allen v Allen* (225 AD 873, 873 [2d Dept 1929]), which plaintiff also cites, is similarly inapposite.  *Allen* involved the issue of whether deposition testimony could be read into evidence at trial when the defendant

155115/2020   RIVERA, MARCUS ANTHONY vs. PORT AUTHORITY OF NEW YORK          Page 6 of 7
Motion No.  006

6 of 7

[* 6]

did not have the right to cross-examine the deponent, and the rules governing the use of depositions at trial do not extend to affidavits submitted on summary judgment.

Plaintiff's argument that Reidy's affidavit should be disregarded because it contradicts Rosano's deposition testimony is without merit. "When deciding a motion for summary judgment, the court's function is issue finding rather than issue determination" (*Genesis Merchant Partners, L.P. v Gilbride, Tusa, Last & Spellane, LLC*, 157 AD3d 479, 481 [1st Dept 2018]). There is no case law that supports the proposition that an affidavit of one witness should be disregarded because it contradicts the testimony of another witness. On the contrary, denying summary judgment based of such conflicting accounts is the very essence of issue finding. Disregarding the affidavit of one of the witnesses would amount to an implicit finding that one witness's testimony is more credible than the other witness's statement.

Because Reidy's affidavit raises a triable issue of fact as to whether the accident occurred at all, plaintiff's motion for partial summary judgment in his favor as to liability on his Labor Law § 240 (1) cause of action against defendants is denied.

The court need not reach the issue of whether Rosano's affidavit should be disregarded as an affidavit tailored to avoid the consequences of summary judgment.

## CONCLUSION

It is hereby **ORDERED** that plaintiff's motion for partial summary judgment is **DENIED**.

20250317124454RTSAID31DBAC9894A45C48FA9DED488C1894A

__3/17/2025__
**DATE**

**RICHARD TSAI, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**155115/2020   RIVERA, MARCUS ANTHONY vs. PORT AUTHORITY OF NEW YORK**          **Page 7 of 7**
**Motion No.  006**

7 of 7

[* 7]